

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Walter C. Woodward, Commissioner
Board of Insurance Commissioners
Austin, Texas

Dear Sir:

Opinion No. O-2373
Re: Does "gross premium re-
ceipts" as used in Article
7064, Vernon's Annotated
Civil Statutes, contemplate
that premiums have been re-
ceived when notes such as
those described have been
accepted in settlement of
the premium account; and
another question.

Your recent request for an opinion of this Depart-
ment upon the questions as are herein stated has been re-
ceived.

We quote from your letter as follows:

"In a recent examination of the Highway
Insurance Underwriters, a Reciprocal Insurance
Exchange operating under the provisions of
Chapter 20, Title 78, Revised Civil Statutes
of Texas, it was found that the bulk of the
Exchange's business is written on a partial
deferred premium payment plan, which contem-
plates that 25 percent of the premium will be
paid in cash and the balance in nine equal
monthly installments, the first to mature one
month from the effective date of the policy.
It was also found that unpaid note install-
ments remain in the assets of the Exchange
after the expiration of the policy and that
note balances are frequently in excess of un-
earned premiums when policies are canceled.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

"It is the practice of the Exchange in
disposing of uncollectible note balances on
expired policies and notes in excess of un-
earned premiums on canceled policies to treat
them as returned premiums by running endorse-
ments to the policies, which state in substance
that the premium should have been the amount
actually collected. This practice has the ef-
fect of reducing 'gross premium receipts' from
which Occupation Tax computations are made and
reduces 'earned premiums' which are used in
calculating claim liability for Workmen's Compen-
sation and Public Liability losses by the Schedule
'P' formula.

"It is the contention of the Exchange that
a premium is neither received nor earned if col-
lection of a premium note is not made, even
though coverage is furnished. The Examiners
take the position that a premium is received
when the Exchange accepts either cash or notes
or both in settlement of the premium and furnishes
the coverage provided in the policy; and that
failure to make collection of a note after furnish-
ing such coverage does not serve to reduce 'gross
premium receipts'. The Examiners further contend
that a premium is earned when the Exchange has
furnished the coverage provided in the policy, and
failure to make collection of a note accepted in
payment thereof does not reduce its premium earn-
ings.

"Two questions arise out of the recited prac-
tices. Please advise this Department: First, if
'Gross Premium Receipts', as used in Article 7064,
Title 78, Revised Civil Statutes of Texas, contem-
plates that premiums have been received when notes
such as those described herein have been accepted
in settlement of the premium account. (These notes
are carried as admitted assets.)

"Second, if, in your opinion, premiums have
been earned when coverage provided in the policy
has been furnished to assureds who fail to make
premium note payments."

Honorable Walter C. Woodward, Page 3

In your first question you refer to Article 7064, Title 78, Revised Civil Statutes of Texas. We assume that you have reference to Article 7064, Title 122, Vernon's Annotated Civil Statutes, which reads as follows:

"Every insurance corporation, Lloyd's, or reciprocals, and any other organization or concern transacting the business of fire, marine, marine inland, accident, credit, title, livestock, fidelity, guaranty, surety, casualty, or any other kind or character of insurance business other than the business of life insurance, and other than fraternal benefit associations, within this State at the time of filing its annual statement, shall report to the Board of Insurance Commissioners the gross amount of premiums received upon property located in this State or on risks located in this State during the preceding year, and each of such insurance carriers shall pay an annual tax upon such gross premium receipts as follows: shall pay a tax of three and twenty-five on hundredths (3.25) per cent, provided, that any such insurance carriers doing two (2) or more kinds of insurance business herein referred to shall pay the tax herein levied upon its gross premium receipts where referred to in this law shall be the total gross amount of premiums received on each and every kind of insurance or risk written, except premiums received from other licensed companies for reinsurance, less return premiums and dividends paid policyholders, but there shall be no deduction for premiums paid for reinsurance. The gross premium receipts, as above defined, shall be reported and shown as the premium receipts in the report to the Board of Insurance Commissioners by the insurance carriers, upon the sworn statements of two (2) principal officers of such carriers. Upon receipt by the Board of Insurance Commissioners of the sworn statements, showing the gross premium receipts by such insurance carriers, the Board of Insurance Commissioners shall certify to the State Treasurer the amount of taxes due by each insurance carrier, which tax shall be paid to the State Treasurer on or before the 1st of March following, and the Treasurer shall issue his receipt to such carrier which shall be evidence of the payment of such taxes. No such insurance carrier shall receive a permit to do business in this State until all such taxes are paid. If any such insurance carrier shall have as much as one-fourth of its entire assets, as shown by said sworn statement, invested in any or all of the following securities: real estate in this State, bonds of this State or of any county, incorporated city or town of this State, or other property in this State in which by law such

Honorable Walter C. Woodward, Page 4

insurance carriers may invest their funds, then the
annual tax of any such insurance carriers shall be
one and one-fourth (1¼) per cent of its said gross
premium receipts; and if any such insurance carrier
shall/invest as aforesaid as much as one-half of its
assets, then the annual tax of such insurance carrier
shall be five eights of one per cent of its gross prem-
ium receipts, as above defined. No occupation tax
shall be levied on insurance carriers herein subjected
to a gross premium receipt tax by any county, city, or
town. All mutual fraternal benevolent associations, now
or hereafter doing business in this State under the
lodge system and representative form of government,
whether organized under the laws of this State or a
foreign State or country, are exempt from the provisions
of this Article. The taxes aforesaid shall constitute
all taxes collectible under the laws of this State
against any such insurance carriers, except the main-
tenance tax provided for under Article 4908 and the
tax on premiums received under Workmen's Compensation
Insurance policies, as provided for in House Bill No.
471, Chapter 25, General and Special Laws, Forty-fifth
Legislature, Regular Session; taxes provided in House
Bill No. 258, Chapter 125, General and Special Laws,
Forty-fifth Legislature, Regular Session; and Senate
Bill 77, Chapter 335, General and Special Laws, Forty-
fifth Legislature, Regular Session; and no other tax
shall be levied or collected from any insurance car-
rier by any county, city, or town, but this law shall
not be construed to prohibit the levy and collection of
State, county, and municipal taxes upon the real and per-
sonal property of such carrier. Purely co-operative or
mutual fire insurance companies carried on by the members
thereof solely for the protection of their own property,
and not for profit, shall be exempt from provisions of
this law; however, foreign assessment casualty companies
admitted to do business in Texas under Chapter 5, Title
78, Revised Civil Statutes of Texas of 1925, shall also
pay a tax of three and twenty-five one hundredths (3.25)
per cent of their gross premium receipts from Texas busi-
ness, as such receipts are herein defined. Provided, how-
ever, if any such company shall have an amount equal to
one-half of the gross amount of assessments, dues, premiums,

Honorable Walter C. Woodward, Page 5

or other amounts collected from policyholders within this State during the preceding year, as shown by the sworn statement herein required to be filed, invested in any or all of the above-mentioned securities, then the annual tax of such company shall be two (2) per cent of its said receipts for such preceding period, and if such company shall have invested as aforesaid an amount equal to the gross amount of such receipts for the preceding year, as shown by said sworn statement, then the annual tax of such company shall be one-half of one per cent of its said receipts."

Article 5032, Vernon's Annotated Civil Statutes, reads in part as follows:

"Any certificate of authority shall continue in effect until the new certificate of authority be issued or specifically refused. The schedule of fees set out in Article 3920, so far as pertinent, shall apply to reciprocal exchanges and their attorneys in fact. Said exchanges shall pay a tax of three and one-fourth (3 1/4) per cent on all premiums collected, except fire and workmen's compensation premiums, under the provisions of Article 7064, Revised Civil Statutes of Texas, 1925, as amended by House Bill No. 8, Chapter 495, Page 2040, Article 4, Acts of the Third Called Session, Forty-fourth Legislature, 1926, as amended Acts 1937, Forty-fifth Legislature. House Bill No. 441, Section 1, as amended Acts 1939, Forty-sixth Legislature, House Bill No. 556, subject to reduction by investment in Texas securities as therein provided; and exchanges writing workmen's compensation insurance shall pay a tax of one-half (½) of one (1) per cent of the workmen's compensation premiums collected under the provisions of Article 7064a, Revised Civil Statutes of Texas, 1925, as enacted by House Bill No. 8, Chapter 495, Page 2040, Article 4, Acts of the Third Called Session, Forty-fourth Legislature, 1926, as amended Acts 1937, Forty-fifth Legislature, by House Bill No. 441, Section 1-b, as amended Acts 1939, Forty-sixth Legislature, House Bill No. 557; and a further tax of three-fifths (3/5) of one (1) per cent or such lesser amount as the Board of Insurance Commissioners may assess, on workmen's compensation premiums collected in this State under the provisions of Chapter 25, Section 1, Acts of 1937, Forty-fifth Legislature.

Honorable Walter C. Woodward, Page 6

"Provided further, that an additional tax of
one-fifth (1/5) of one (1) per cent or such lesser
amount as the Board of Insurance Commissioners may
assess shall be paid by such exchanges on gross prem-
iums collected for motor vehicle insurance under the
provisions of Chapter 253, Acts of the Fortieth Legis-
lature, as amended Acts of 1937, Forty-fifth Legisla-
ture by Senate Bill No. 77. Acts 1915, p. 269; Acts
1939, 46th Leg., p. 417, § 7."

The word "gross" is defined in the case of Fire As-
sociation of Philadelphia v. Love, 108 S. W. 158, by the Su-
preme Court. We quote from this case as follows:

"The word 'gross' is defined: 'Whole; entire;
total; without deduction.' Webster's Dictionary; Scott
v. Hartley, 126 Ind. 246, 25 N. E. 826. The language
under consideration in the statute is: 'The gross amount
of premiums received in the state.' There is no am-
biguity in the language of the statute, and there can
be no doubt as to what its ordinary meaning is. The
rule governing the interpretation of such language is
thus stated in Chambers v. Hill, 26 Tex. 472; 'Where
language is plain and unambiguous, there is no room for
construction. It is never admissible to resort to subtle
and forced constructions to limit or extend the mean-
ing of language. And, where words or expressions have
acquired a definite meaning in law, they must be so ex-
pounded.' Under the rule of interpretation just quoted
there is no room for construction of the language of the
statute. It just simply means that the entire sum re-
ceived by such insurance companies as premiums in this
State should be the basis upon which to estimate the
occupation tax required to be paid by such companies.
If, however, there were any want of certainty in the
language used, the Legislature defined the term in
these words: 'Gross premium receipts are understood
to be a premium receipt reported to the Commissioner of
Insurance and Banking by the insurance companies upon
the sworn statement of two principal officers of such
companies.' The premium receipts required to be re-
ported by the officers of the insurance companies are
the gross premiums received by the company in this
state. Therefore, taking the language of the entire
provision into consideration, it means, as stated be-

Honorable Walter C. Woodward, Page 7

fore, that the basis upon which the tax is to
assessed is 'the gross premium receipts,' the
whole amount received, without deduction or abat-
ment."

The terms "premium", "assessment", "deposit", e.
as used in the law of insurance in connection with the word
"note", refer to the instruments given in place of payment,
or in payment, in whole or in part, of insurance premiums or
assessments. They may constitute actual payment, or mere evi-
dence of a debt, and refer to premiums or assessments passed
or currently due, or to fall due in the future. (Couch on In-
surance, Section 651)

As above stated, a premium note may constitute pay-
ment or it may merely evidence a debt representing the prem-
ium. In determining into which class a particular note falls,
the test is the intention of the parties. (Duncan v. United
Mutual Fire Insurance Co., 254 S. W. 1110)

Where premiums are payable in advance and the policy
and the application constitute the contract, the acceptance of
the premium note instead of cash effects a payment of the prem-
ium. (Amicable Life Ins. Co. v. White, 38 S. W. (2d) 860)

In view of the foregoing authorities, you are respect-
fully advised that it is the opinion of this Department that
the term "gross premium receipts" as used in Articles 5032 and
7064, supra, means and includes all premiums received whether
in cash or by note, which effects a payment of the premium.
Here we are concerned with the proposition of whether or not
the notes described above constitute or effect a payment of the
premium. We believe that under the facts stated, the notes in
question effect a payment of the premiums.

In answer to your second question, you are further ad-
vised that it is our opinion that the premiums have been earned
when coverage provided in the policy has been furnished to the
assured, notwithstanding the fact the assured fails to make
the premium note payments.

Honorable Walter C. Woodward, Page 8

Trusting that the foregoing fully answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By          *Ardell Williams*

Ardell Williams
Assistant

AW:BBB

APPROVED NOV 20, 1940

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY _____
CHAIRMAN