FIRE ASSOCIATION OF PHILADELPHIA v. THOMAS B. LOVE, COMMISSIONER OF INSURANCE AND BANKING.

No. 1813. Decided February 26, 1908.

**1.—Insurance Company—Taxation—Gross Receipts.**

The tax required to be paid by a fire insurance company in order to obtain a permit to do business in Texas (Act of April 18, 1905, Laws, 29th Leg., p. 374) is based on the entire gross receipts of the company from business in the State during the preceding year, without deducting therefrom the amounts paid to other companies for reinsuring risks so taken, nor those returned to policy holders on account of the cancellation of their policies. (Pp. 378-382.)

**2.—Same—Cases Distinguished.**

German Alliance Ins. Co. v. Vancleave, 191 Ill., 410, and State ex rel. v. Fleming, 97 N. W. Rep., 1063, distinguished as involving the taxation of premiums as property, while the Texas statute imposes an occupation tax on the privilege of doing business. (P. 378.)

**3.—Same—Gross Amount of Premiums Defined.**

"Gross amount" means "whole, entire, total without deduction," and is not ambiguous or in need of interpretation. (P. 380.)

ON MOTION FOR REHEARING.

**4.—Statutory Construction.**

The construction of the term "gross amount" in the Act of April 18, 1905, is not affected by the previous law (Rev. Stats., art. 3084) as to the reports of their receipts by insurance companies, which allowed deduction of

the sum paid for re-insurance. The latest expression of the legislative will must prevail, and the executive construction of the former law was of little weight since the language of the later statute was plain and unambiguous. (Pp. 381, 382.)

Original application to the Supreme Court by the Fire Association of Philadelphia for writ of mandamus against Love as Commissioner of Insurance.

*Crane, Gilbert & Crane* and *Carden & Starling,* for relator.

*R. V. Davidson,* Attorney-General and *Wm. E. Hawkins,* Assistant, for respondent.

MR. JUSTICE BROWN delivered the opinion of the court.

The Fire Association of Philadelphia instituted this proceeding in this court praying for a mandamus to Thos. B. Love, Commissioner of Insurance and Banking for the State of Texas, requiring him to certify to the Treasurer of the State of Texas the amount of taxes to be paid by the said Fire Association in order that it may obtain a permit to do business in the State of Texas during the year 1908 upon the report filed by the relator.

The facts stated in the petition are substantially as follows: Relator is a corporation organized under the laws of the State of Pennsylvania and empowered to do a fire insurance business. Under the laws of the State of Texas it was regularly authorized by permit to do business in this State during the year 1907 and, in pursuance of that authority, did transact its business within this State during that year. Under the existing law it is necessary for the association to pay its occupation tax for the year 1908 before it can secure a permit to do business in this State for that year. It is required by law to make a report to the Commissioner of Insurance and Banking, stating the gross amount of premiums received by it during the year 1907, upon which report the Commissioner is required to give a certificate of the amount of tax to be paid by the said corporation, which certificate is to be presented to the Treasurer and the tax paid. The Fire Association in the transaction of its business during the year 1907 paid to other insurance companies for reinsuring risks taken by the said association the sum of $110,262, and it also returned during the said year to the holders of policies the sum of $54,841.28 on account of the cancellation of policies issued by it during that year. It is alleged that in each policy there was a clause by which either the Fire Association or the policy holder might demand its cancellation and a return of the unearned portion of the premium must then be made to the policy holder, and, in pursuance of this clause of the policy and in the transaction of its business, it is alleged that the said Fire Association did make a return of the amount above stated. It is also alleged that it was necessary in the transaction of its business in order to protect it against the competition of other companies that it should take risks upon property in larger amounts than was prudent for it to carry, and that, in order to secure itself in such risks, it was necessary and

in accordance with the usual manner of transacting the business of such companies that it reinsure such risks in other companies for which it was required to pay the sum before stated. In making its report to the Commissioner the Fire Association claimed a deduction of the amount paid for reinsurance and the sum returned to policy holders from the gross amount of the premiums received by it during the year 1907 and shown in its report, which the Commissioner declined to allow, refusing to certify the amount of the tax upon that basis; and the relator prays for the writ of mandamus to compel the Commissioner to certify the amount of its tax after deducting the sums so claimed by it.

It is claimed by the relator that the language, "the gross amount of premiums received in this State, upon property located in the State," should be construed not to include the sums which the Fire Association should pay for reinsurance, or upon cancelled policies, and this presents the only question there is in the case.

It is assumed by counsel that the Legislature intended to levy a tax only upon such sums as should be retained by the insurance companies. In support of this position counsel refer to the German Alliance Ins. Co. v. Vancleave, 191 Ill., 410; State v. Fleming, Tax Com'r, and State, by relation of Palmer v. Fleming, Tax Com'r, 97 N. W. Rep., 1063. The first case cited from Nebraska did not involve this question but the second is very similar to the case of German Alliance Co. v. Vancleave, and, in fact, follows the Illinois case; they are so similar that a review of one will be sufficient. In the State of Illinois the Legislature passed a law entitled: "An Act providing for a tax on gross premium receipts of insurance companies and associations other than life." It required also the making of a report to the Commissioner of Insurance and the levy by him of a tax upon "the gross amount of premiums received by it for business done in this State." The Supreme Court of Illinois held that the language of the statute of that State did not include the money returned on cancelled policies.

There is a marked distinction between the law of Illinois and the statute of this State. In the Illinois statute the levy was made upon the gross premiums received as property, while in this State the tax is imposed for the privilege of doing business in Texas. Granting that the Illinois court correctly construed their statute, we are of opinion that the reasoning of the court does not apply to the facts of this case. The Supreme Court of Illinois said: "The word 'gross' is opposed to 'net,' and its ordinary meaning is the entire amount of the receipts of a business, while the net receipts are those remaining after deductions for the expenses and charges of conducting the business. It is claimed on one side that the Legislature meant by the gross amount of premiums the entire premiums received for furnishing insurance indemnity during the year, while on the other side it is insisted that they meant to include all the money which comes to an insurance company, although paid under an agreement for refunding upon the cancellation of the policy, and although the policy is cancelled and the insurance ceases and the money is refunded. . . . In such a case there is in the end no sale and no business done, in

any proper sense. So in the case of an insurance policy for a definite period with an agreement that it may run any portion of that period and then cease; if the policy is cancelled and the insurance ceases there is no insurance business for the remaining portion of the period. The premiums returned are not paid as a liability of the insurance company or as a charge or expenses of conducting the business, but because one party or the other avails of the option and terminates the insurance." The theory seems to be that the premiums were held subject to be claimed by the policy holders and having been returned are not included in the terms of the law because of the conditions in the contract. It is plausible to say that absolute property right did not attach to the premium thus received, but it can not be said that the insurance company did not enjoy the privilege of doing the business.

The section of the statute which is under investigation reads as follows: "Every fire insurance company . . . at the time of filing its annual statement, shall report to the Commissioner of Insurance and Banking the gross amount of premiums received in the State, upon property located in this State, and from persons residing in this State, during the preceding year, and each of such companies shall pay an annual tax upon such gross premium receipts as follows." The law then provides that the fire insurance companies shall pay a tax of 2 percent upon the gross premiums received. The statute also contains this language: "And the gross premium receipts are understood to be a premium receipt reported to the Commissioner of Insurance and Banking by the insurance companies upon the sworn statement of two principal officers of such companies." The statute further provides that, "upon receipt by him of sworn statements showing the gross premium receipts by such companies, the Commissioner shall certify to the State Treasurer the amount of taxes due by each company, which tax shall be paid to the State Treasurer for the use of the State on or before the first day of March following, whose receipt shall be evidence of the payment of such taxes, and no insurance company shall receive a permit to do business in this State until such taxes are paid." By its caption the act is declared to be: "An Act providing for the levy and collection of an occupation tax upon individuals, companies, corporations, and associations pursuing any of the occupations" named in the act. When the premium is received by the insurance company it has transacted the business for which it is licensed and it becomes a matter of no importance to the State whether the company retains the money or not. The whole purpose and object of ascertaining the amount of premiums received is to fix the value of the privilege granted. But by ascertaining the business done during the preceding year, it is claimed that where the company at the time of issuing the policy intended to reinsure the property and did afterwards reinsure it, that the amount thereafter paid out for reinsurance does not constitute a part of the gross · premiums received. Counsel have not undertaken to show by what rule of construction they arrive at such a conclusion. If it were established that the intention of the company to reinsure a part of the risk with a portion of the receipts

should govern in ascertaining the amount of the tax it would introduce an element of uncertainty, a fact which the Commissioner of Insurance could not by any means verify, and there is nothing in the act to justify such construction.

It is also claimed that in taking such premiums the insuring company virtually acted as the agent or trustee of the company with which the reinsurance was made. But the facts are not shown that the companies in which it reinsured had the right to claim a portion of the premium at the time the insurance was effected, nor is it shown that the policy holder had a right to require that the reinsurance should be effected for his security, therefore, there is absolutely wanting any fact which would stamp upon this money the character of being held either as an agent or as a trustee for anybody. When received it became as absolutely the money of the insurance company as did that which was received on other policies where no such intention to reinsure existed.

The claim for a deduction of the sums returned to the policy holders upon cancellation is more plausible but not more sound in true legal construction of the act than the other. It is true that the policy holder had the right under the contract to surrender his policy and claim the unearned premiums and there was a right on the part of the insurance company to do likewise, but there is nothing which indicates with any certainty that the demand would be made by either—it is simply a matter of choice and the funds that went into the hands of the insurance company became its property subject to its absolute control and disposition.

The word "gross" is defined, "whole, entire, total, without deduction." (Webster's Dictionary; Scott v. Hartley, 126 Ind., 239.) The language under consideration in the statute is "the gross amount of premiums received in the State." There is no ambiguity in the language of the statute and there can be no doubt as to what its ordinary meaning is. The rule governing the interpretation of such language is thus stated in Chambers v. Hill, 26 Texas, 472: "Where language is plain and unambiguous, there is no room for construction. It is never admissible to resort to subtle and forced constructions to limit or extend the meaning of language. And where words or expressions have acquired a definite meaning in law, they must be so expounded." Under the rule of interpretation just quoted there is no room for construction of the language of the statute, it just simply means that the entire sum received by such insurance companies as premiums in this State should be the basis upon which to estimate the occupation tax required to be paid by such companies. If, however, there were any want of certainty in the language used, the Legislature defined the term in these words: "Gross premium receipts are understood to be a premium receipt reported to the Commissioner of Insurance and Banking by the insurance companies upon the sworn statement of two principal officers of such companies." The premium receipts required to be reported by the officers of the insurance companies are the gross premiums received by the company in this State. therefore, taking the language of the entire provision into consideration, it means, as stated before,

that the basis upon which the tax is to be assessed is "the gross premium receipts," the whole amount received, without deduction or abatement. The construction which the relator seeks to have placed upon this language would not be a declaration of the intention of the Legislature in the enactment of the law, but the expression of the will of the court in the application of it to the particular case. It is not permissible for a court, no matter what its opinion might be of the policy of the enactment or of the justice of its effect, to substitute its own opinions with regard to such matters for the plain and clearly stated intention of the legislative department. The application for the writ of mandamus will therefore be refused.

### ON MOTION FOR REHEARING.

Counsel for the Fire Association call our attention to the 7th paragraph of Article 3084, Revised Statutes, which reads as follows: "The income of the company during the preceding year, stating the amount received for premiums, specifying separately fire, marine and inland transportation premiums, deducting reinsurance, the amount received for interest, and from all other sources." That paragraph sets out the manner in which the income should be shown in the report which the insurance company was by law required to make. It is assumed in the argument by the learned counsel that this provision of the statute is in force and applies to fire insurance companies under the law of 1907. So far as the paragraph copied above is in conflict with the requirements of section 8 of the Act of 1907, as quoted in our original opinion, the latter act must prevail. The Act of 1907 prescribes with certainty what the report of the fire insurance company shall be upon the subject of its gross receipts and its terms are not modified by the former law. Its language, therefore, must be given effect in order to arrive at the legislative intent.

Counsel also insist that we should be governed by the construction placed upon the former law by the executive officers, charged with its enforcement. When consistent with the language construed and when that to be construed is the same, such construction is entitled to great weight, but when the language to be construed is plain and unambiguous, as is that before us, executive construction is entitled to little consideration. (Galveston, H. & S. A. Ry. Co. v. State, 81 Texas, 57.) In the case cited the court said: "If the words contained in the act under consideration were of doubtful meaning we could not lightly disregard the construction given them by the officers of the State who were called upon to act upon them. But their import appears too clear to admit of any reasonable doubt. We are constrained, therefore, to follow our own convictions, regardless of the views manifested by the acts of the officers of the executive department."

We are not construing the 7th paragraph of article 3084, but an entirely different law which does not even contain the same language embraced in that article of the statute, therefore from no standpoint can it be said that the construction placed upon the article referred

to should influence this court in determining the question now presented to it.

The paragraph quoted from article 3084 serves a good purpose, however, in arriving at the intention of the Legislature in enacting the law of 1907. In the former law one deduction was allowed, that is, "reinsurance" which by a plain rule of construction excluded all others and necessarily excluded "returned premiums" as a deduction under that statute. When the Legislature came to enact a new law upon the same subject they omitted the deduction for "reinsurance" which had been previously allowed, and thereby manifested an intention that the law should be so changed that no deduction should be made, that is, that "gross receipts" should mean all of the premiums received by the insurance company for insurance on property in this State without any deduction; just what the words mean in their ordinary acceptation. The decisions by the courts of other States upon statutes so widely different from ours can furnish no guide to us and certainly can not be allowed to control this court in the interpretation of the plain language of a statute of this State. The motion for rehearing is therefore overruled.

Filed March 11, 1908.