SAN ANTONIO GENERAL DRIVERS, HELPERS LOCAL NO. 657 ET AL v. W. L. (JACK) THORNTON.

No. A-5585. Decided February 6, 1957.
Rehearing overruled March 13, 1957.
(299 S.W. 2d Series 911).

*Edward Penshorn*, and *John Peace* of San Antonio, *Mullinax & Wells* and *L. N. D. Wells, Jr.*, of Dallas, for relators.

*Rawlings, Sayers, Scurlock & Edison*, of Fort Worth, and *Ewell Muse, Jr.*, of Austin, for respondents.

MR. JUSTICE CALVERT delivered the opinion of the Court.

This is an original proceeding in this Court in which relators seek a writ of mandamus to compel the respondent as Presiding Judge of the First Administrative Judicial District to grant their motion for the appointment of a substitute judge to hear all proceedings in Cause No. 5711-B pending on the docket of the District Court of the 44th Judicial District of Dallas County. The respondent, Thornton, is also Judge of the District Court of the 44th Judicial District.

Cause No. 5711-B was filed in the District Court of the 44th Judicial District by Southwestern Motor Transport, Inc., against International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, A.F.L. et al. In the suit the plaintiff charged the defendants with unlawful labor practices which it alleged were resulting in actual damages through loss of business and profits in the sum of approximately $1,000 per day, and damages to its good will of approximately $1,000,-000. It prayed for recovery of the sum of $1,198,000 and for temporary and permanent injunctions restraining and enjoining the defendants from continuing the unlawful acts and practices.

Four days after the filing of Cause No. 5711-B some of the defendants in the suit filed a motion therein by which they sought the appointment of a substitute judge to hear all proceedings in the suit. The motion recited that it was made pursuant to the provisions of "S.B. No. 46, Chapter 388, Acts of 54th Legislature, Regular Session (1955); Vernon's Ann. Civ. St., Article 1995 (17-A)." The motion was opposed by the plaintiffs in the case and was by Presiding Judge Thornton refused. This proceeding was thereupon filed in this Court.

■ The first question to be decided in the case as it has been presented to this Court is whether the motion filed by relators with Presiding Judge Thornton is governed by the provisions of Section 6 of Article 5154g, Vernon's Annotated Texas Statutes (Acts 1955, 54th Leg., p. 1029, ch. 387), to be referred to hereafter as Senate Bill 45, or by the provisions of Article 1995-17a, Vernon's Annotated Texas Statutes (Acts 1955, 54th Leg., p. 1031, ch. 388, Sec. 1), to be referred to hereafter as Senate Bill 46. If the motion is governed by the provisions of Section 6 of Senate Bill 45 it must have been filed "within two (2) days after notice of the institution of said cause," but if governed by the provisions of Senate Bill 46 it was timely if filed "within five (5) days after notice of institution of suit." We hold that the motion is governed by Senate Bill 46 and that Section 6 of Senate Bill 45 is not at all applicable.

Omitting the saving and emergency clauses, Senate Bill 45 contains six sections. Section 1 declares it to be the public policy of this state that the right of persons to work shall not be abridged because of membership or non-membership in a labor union and that the exercise of the right shall be free from threats, force, intimidation or coercion. Section 2 makes strikes or picketing to compel an employer to recognize or bargain with,

or employees to join or select as their representative, a union which does not represent a majority of the employees of the employer, a violation of the rights vouchsafed by Section 1. Section 3 authorizes the trial judge, in suits filed under Section 2, to order an election to determine whether the union represents a majority of the employees of the employer, such election to be held "within twenty (20) days after the institution of such proceeding or suit." This Section also contains provisions regulating the holding of the election. Section 4 imposes liability for damages on any person violating the provisions of the Bill and authorizes the granting of injunctive relief. Section 5 authorizes the Attorney General or any District or County Attorney to seek injunctive relief on behalf of the State against violations of the provisions of the Bill.

Section 6 reads as follows:

"Sec. 6. Any party to any suit or cause of action arising under this Act may make, within two (2) days after notice of the institution of said cause, application to the Presiding Judge of the Administrative Judicial District within which the suit is filed who shall immediately assign a District Judge from within said Administrative Judicial District who shall then hear all proceedings in the cause."

Aside from the saving and emergency clauses, Senate Bill 46 contains only one section. It adds a new subsection to Article 1995 to be known as subdivision 17a dealing with labor disputes and reading in part as follows:

"17a. Labor Disputes. Suits to enjoin strikes or picketing for an unlawful purpose or conducted in an unlawful manner may be brought in (1) the county where the strike or picketing is alleged to have occurred; or in (2) the county of the residence of the defendant or any one of the defendants, if there be more than one; or in (3) Travis County when suit is brought by the State of Texas, and the State, its agencies or a political subdivision thereof is a party to the suit. Provided however, that where suit is filed in a county authorized by the provisions of clauses (1) or (2) above, any party thereto may, within five (5) days after notice of institution of suit, make written application to the Presiding Judge of the Administrative Judicial District within which the suit is filed for the appointment of a substitute judge in the court where suit is filed, whereupon such Presiding Judge of such administrative Judicial District immediately shall assign another District Judge from such Ad-

ministrative Judicial District who shall thereafter hear all proceedings in such suit. The judge of the court in which such suit is filed shall have full power to act in the case until receipt by him of a copy of an order of the Administrative Judge removing the case or appointing a substitute judge, and the provisions of this Act shall be cumulative of existing rights of the parties to a change of venue authorized by law. * * *."

The remaining sentence of the Section relates to the subpoenaing of out-of-county witnesses.

It seems obvious from the foregoing analysis of Senate Bills 45 and 46 that they do not operate in the same general field or relate to the same general subject matter.

Senate Bill 46 deals principally with the forum in which and the judge before whom suits to enjoin unlawful strikes and picketing are to be tried. It is primarily a venue statute as is shown by the fact that it was enacted as a new subdivision of Article 1995, the general venue statute, and by the provisions of the first sentence of the new subdivision which fix venue in any one of three different counties. In addition, the proviso of the Act gives any party to the litigation the right to "strike" the judge of the court in which the suit is filed and obtain a substitute judge through appointment by the Presiding Judge of the Administrative Judicial District.

It is certainly not the principal object of Senate Bill 45 to govern either the forum in which or the judge before whom the type of litigation there dealt with is to be tried. On the contrary, the principal object of Senate Bill 45, as is obvious from its terms, is the outlawry of the particular type of strikes and picketing described in Section 2 of the Bill and the prompt holding of an election to determine whether the strike and picketing involved in the particular suit is of the type prohibited by Section 2. Read in this context and considered in connection with this object, it appears rather definite that it was not the purpose of the language of Section 6 of Senate Bill 45 to give the parties a right to "strike" the judge in whose court the suit was filed. It does not command the appointment of a "substitute" or different judge. Giving the language of Section 6 its plain meaning and a meaning in harmony with the general purpose of the Bill, it would seem to be the purpose of the section to provide any party to the litigation with a means of securing the services of a judge immediately upon the filing of suit so that the absence of the regular judge or his occupa-

tion with other matters will not delay putting into operation the election machinery provided for in Section 3.

As Senate Bills 45 and 46 are here interpreted, the time for filing a motion to "strike" a judge will be the same in a suit brought pursuant to authority contained in Senate Bill 45 as it is in all other suits to enjoin unlawful strikes or picketing. We construe the language of Senate Bill 46 requiring the motion to be filed "within five (5) days after notice of institution of suit" to mean that the motion must be filed within five days after receipt of legal notice, that is, after service of citation or notice as otherwise provided by the Rules of Civil Procedure or the statutes of this state. The motion was filed in this case within five days after notice of institution of suit and was therefore timely filed.

■ Considering then that the motion filed with Presiding Judge Thornton is governed by the provisions of Senate Bill 46, our next question is whether, under that Bill, relators were entitled to the relief they sought. We hold they were not.

The suit filed against relators by Southwestern Motor Transport, Inc., seeks both damages and injunctive relief. There is no reason to assume or believe that either count was included in the petition in bad faith. Is it, then, a suit "to enjoin strikes or picketing" within the meaning of the Bill?

Classified on the basis of the relief sought there are, generally speaking, three types of suits growing out of labor disputes: (1) those which seek only injunctive relief, (2) those which seek only damages, and (3) those which seek both damages and an injunction. Keeping in mind this classification of suits, it is perhaps sound to say that according to the plain meaning of the words used therein Senate Bill 46 deals only with suits of the first category and does not apply to suits of the third category such as the instant case. However, it may not be unreasonable to say, as relators would have us do, that the words "suits to enjoin strikes or picketing" are broad enough to encompass any suit in which there is a prayer for injunctive relief even though it also includes a prayer for damages. If this meaning be not unreasonable, the words are subject to two reasonable constructions, are therefore ambiguous, and we may look to the legislative history of the Bill to see which meaning the Legislature intended the words to have. Koy v. Schneider, 110 Texas 369, 396, 221 S.W. 880, 884; Red River Nat'l Bank v. Ferguson, 109 Texas 287, 206 S.W. 923, 926; 11 T.L.R. 562.

When we look to the legislative history of Senate Bill 46 we find that as introduced in the Senate the Bill applied to "Suits for damages for, suits to enjoin, or suits for damages and to enjoin strikes and picketing." It thus expressly applied to suits in all three of the categories heretofore noted. On the floor of the Senate an amendment was offered and adopted striking from the foregoing language the following: "for damages for, suits to enjoin, or suits for damages and," leaving the Bill applicable to "Suits to enjoin strikes or picketing." The amendment eliminated suits of the second and third categories and left the Bill applicable only to suits of the first category. The legislative history of Senate Bill 46 thus confirms what seems to be the plain meaning of the words themselves, and makes clear the legislative intent. We have no right to give the Bill a meaning that does not comport with that intent even though it may appear to us to operate somewhat unequally on contending litigants. Vaughan v. Southwestern Surety Ins. Co., 109 Texas 298, 206 S.W. 920, 921. In Fire Assn. of Philadelphia v. Love, 101 Texas 376, 108 S.W. 158,160, this Court declared: "It is not permissible for a court, no matter what its opinion might be of the policy of the enactment or of the justice of its effect, to substitute its own opinions with regard to such matters for the plain and clearly stated intention of the legislative department."

Inasmuch as Senate Bill 46 does not authorize the appointment of a substitute judge in suits which seek both damages and injunctive relief, relators are not entitled to a writ of mandamus to compel Presiding Judge Thornton to grant their motion.

Respondents have urged before this Court a number of other reasons why the writ of mandamus should be denied, some of which call into question the constitutionality of Senate Bill 46. A court will not pass on the constitutionality of a statute if the particular case before it may be decided without doing so. Waller v. State, Texas Civ. App., 68 S.W. 2d 601, 603, writ refused. Accordingly we have not considered and do not here pass on the constitutionality of Senate Bill 46.

Relator's prayer for a writ of mandamus is denied.

Associate Justice Norvell not sitting.

Opinion delivered February 6, 1957.

Mr. Justice Smith, concurring.

This is an original mandamus proceeding by the San Antonio General Drivers & Helpers Local No. 657 and other members of that Union against Honorable W. L. Thornton et al., to require Judge Thornton, as Presiding Judge of the First Administrative Judicial District, to grant their motion for the appointment of a substitute judge to hear all proceedings in Cause No. 5711-B. This cause is now pending in the 44th District Court of Dallas County whose presiding judge is also Judge Thornton. The Southwestern Motor Transport, Inc. brought Cause No. 5711-B to the 44th District Court of Dallas County alleging many counts of damages and a prayer for damages and an injunction against the labor union defendants. Four days after the filing of the suit, the defendants filed a motion[1] requesting respondent, Thornton, to assign another District Judge pursuant to Senate Bill 46. Judge Thornton, acting in his capacity as Presiding Judge of the First Administrative Judicial District, and after a hearing, entered an order denying the motion and the defendants filed this petition for Writ of Mandamus.

It is contended by the relators that Senate Bill 46 applies to this situaiton, whereas, the respondents take the position that Senate Bill 45 is the applicable statute. Senate Bill 45 has become Article 5154g of Vernon's Annotated Civil Statutes of the State of Texas, under Title 83 designated "Labor." Senate Bill 46 is designated as Subdivision 17a of Article 1995, Vernon's Annotated Civil Statutes of the State of Texas, under Title 42 designated "Venue." The pertinent sections of these two Senate Bills are as follows:

"STRIKES AND PICKETING - - - REGULATION

"S. B. No. 45

"Sec. 2.   It shall be a violation of the rights set forth in

---

[1]Movants are parties to this suit, having been cited as defendants in the above styled and numbered suit to enjoin strikes or picketing within the meaning of S.B. No. 46, Chapter 388, Acts of 54th Legislature, Regular Session, (1955); Vernon's Ann. Civ. St., Article 1995 (17-A).

The cited statute provides: "That where suit is filed in a county authorized by the provisions of clauses (1) or (2) above, any party thereto may, within five (5) days after notice of institution of suit, make written application to the Presiding Judge of the Administrative Judicial District within which the suit is filed for the appointment of a substitute Judge in the court where suit is filed, whereupon such presiding Judge of such Administrative Judicial District immediately shall assign another District Judge from such Administrative Judicial District who shall thereafter hear all proceedings in such suit."

This application is being made by parties defendant in this suit this 29th day of November, 1955, within five (5) days after notice of institution of suit.

Section 1 for any person or persons, or associations of persons, or any labor union or labor organization, or the members or agents thereof, acting singly or in concert with others, to establish, call, maintain, participate in, aid or abet any strike or picketing, an object of which is to urge, compel, force or coerce any employer to recognize or bargain with, or any employee or group of employees to join or select as their representative, any labor union or labor organization which is not in fact the representative of a majority of the employees of an employer or, if the employer operates two or more separate and distinct places of business, is not in fact the representative of a majority of such employees at the place or places of business subjected to such strike or picketing.

"Sec. 4. Any person, organization or association who violates any of the provisions of this Act shall be liable to the person suffering therefrom for all resulting damages, and the person subjected to strike or picketing in violation of this Act is *given right of action to redress such wrong or damages, including injunctive relief,* and the District Courts of this State shall grant injunctive relief when a violation of this Act is made to appear.

"Sec. 6. Any party to any suit or cause of action arising under this Act may make, within two (2) days after notice of the institution of said cause, application to the Presiding Judge of the Administrative Judicial District within which the suit is filed who shall immediately assign a District Judge from within said Administrative Judicial District who shall then hear all proceedings in the cause."

\* \* \* \* \*

## "SUITS TO ENJOIN STRIKES OR PICKETING
## "S. B. No. 46

"Sec. 1. That a new subdivision be added to Article 1955 of the Revised Civil Statutes of the State of Texas, of 1925, to be designated as Subdivision 17a, reading as follows:

"17a. Labor Disputes. *Suits to enjoin strikes or picketing* for an unlawful purpose or conducted in an unlawful manner may be brought in (1) the county where the strike or picketing is alleged to have occurred; or in (2) the county of the residence of the defendant or any one of the defendants, if there be more than one; or in (3) Travis County when suit is brought by the State of Texas, and the State, its agencies or a political subdivision thereof is a party to the suit. *Provided, however,*

*that where suit is filed in a county authorized by the provisions of clauses (1) or (2) above, any party thereto may, within five (5) days after notice of institution of suit, make written application to the Presiding Judge of the Administrative Judicial District within which the suit is filed for the appointment of a substitute judge in the court where suit is filed, whereupon such Presiding Judge of such Admiinstrative Judicial District immediately shall assign another District Judge from such Administrative Judicial District who shall thereafter hear all proceedings in such suit.* The judge of the court in which such suit is filed shall have full power to act in the case until receipt by him of a copy of an order of the Administrative Judge removing the case or appointing a substitute judge, and the provisions of this Act shall be cumulative of existing rights of the parties to a change of venue as authorized by law." (Emphasis supplied.)

Cause No. 5711-B is a suit for damages and injunction. Relators vigorously contend it is not. The petition filed by respondent, Southwestern Motor Transport, Inc., alleged a conspiracy and unlawful combination, and that for the purpose of effectuating the terms of such unlawful agreement and conspiracy, design and combination, the relators committed many overt acts. It further alleged that such activities were for the purpose of compelling plaintiff to agree to a "closed shop," and for the purpose of compelling plaintiff to become a party to an illegal "hot cargo" clause in the proposed contract. The petition contained an allegation of a complete absence of a labor dispute between "International and its constituent Locals Nos. 657, 745 and 968 and other constituent Locals and the Truck Line Defendant." And that "No labor dispute exists between plaintiff and its employees." The petition further alleged that the proposed contract and agreement, containing the "hot cargo" or "unfair goods" clause was void and unenforceable, and that the legality or illegality of such contract is neither dealt with nor determined by the National Labor Relations Act, or by applicable State laws.

There was not only a reasonable basis for holding this to be a suit for damages, but, in my opinion, the pleadings clearly show it is one for damages. Action in "bad faith" on the part of respondent company does not enter into the picture. Therefore, the allegations in the petition alleging facts, which, if true, would entitle respondent, Southwestern Motor Transport, Inc. to damages, and the allegations and prayer for injunction are indivisible. The fact that respondent, Southwestern Motor

Transport, Inc. asked for an injunction to protect the jurisdiction of the Court over the subject matter and the parties and to hold the same in status quo and to prevent the occurrence of further damages until the case could be tried on its merits does not automatically convert the action into one solely to enjoin strikes or picketing for an unlawful purpose or conducted in an unlawful manner. This being true, it necessarily follows that the injunction sought was ancillary to the main suit. This is apparent by reference to the two Senate Bills as set out above. Senate Bill 45 gives a right of action for damages, including injunctive relief, whereas, Senate Bill 46 applies to suits which only seek to enjoin strikes or picketing. Senate Bill 46 was not intended to refer to any type of action other than that of injunction only. The suit before us is one of a combination of damages and injunction, precluding application of the pure injunction statute, Senate Bill 46. Our construction of Senate Bill 46 is further exemplified by delving into the legislative record.

On January 18, 1955 Senate Bill No. 46 was introduced, read, and referred to the Senate Committee on Civil Jurisprudence. At that time, the caption read as follows:

"A BILL

"TO BE ENTITLED

"AN ACT amending Article 1995 of the Revised Civil Statutes of the State of Texas, 1925, by adding a new Subdivision 17a providing that *suits for damages or to enjoin, or suits for damages and to enjoin* strikes or picketing for an unlawful purpose or conducted in an unlawful manner may be brought in the county where the strike or picketing occurred, or in a county adjoining the county in which the unlawful acts occurred, or in the county of residence of a defendant, or in Travis County; repealing all laws or parts of laws in conflict with such subsection; and declaring an emergency." (Emphasis supplied.)

The body of the Bill contained language identical with that emphasized in the caption.

There were two amendments to this Bill in the Senate. The amendments struck from the caption and the Bill the words *"for damages or to enjoin, or suits for damages and"* leaving the rest of the Bill undisturbed. The Bill as amended referred only to "suits to enjoin." By striking out the above quoted words the Legislature intended that this enactment should ap-

ply only to injunction suits and not to those sounding in damages or in any combination of damages and injunction.

This Court can properly consider evidence of the Legislative intent other than the words of a statute without first determining that the statute is ambiguous. "Courts should not lose sight of the fact that statutory interpretation, whatever it may be called so far as the function of courts and jury is concerned, is a fact issue. Where available, the courts should never exclude relevant evidence on that issue of fact." 2 Horack, Sutherland On Statutory Construction, 316-317.

The courts strive for a construction consistent with the purposes of the legislation, and Texas authorities have held that the courts follow the intention of the Legislature. See Cousins v. Sovereign Camp, W. O. W., 120 Texas 107, 35 S.W. 2d 696; Wood v. State, 133 Texas 110, 126 S.W. 2d 4; State v. Dyer, 145 Texas 586, 200 S.W. 2d 813. In many instances, the purposes of the enactment cannot be discovered from the Act itself but only from the economic and social conditions throughout the State, the evil to be remedied, and the history of the Bill. Statutory phrases may have more than one reasonable meaning within the context. As said in 43 Harvard Law Review, p. 868; "A statute is neither a literary text nor a devine revelation. Its effect is therefore neither an expression laden with innumerable emotional overtones nor a permanent creation of infallible wisdom. It is a statement of situation, or rather of a group of possible events within a situation, and as such is essentially ambiguous." The fact that the Legislature struck from the Act the provision referred to above should be considered in determining the intention of the Legislature. "When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no rule of law which forbids its use, however clear the words may appear on superficial examination. The interpretation of the meaning of statutes, as applied to justiciable controversies, is exclusively a judicial function." United States v. American Trucking Association, 310 U.S. 534, 60 Sup. Ct. 1059, 84 L. Ed. 1345.

Thus it is seen that the legislative history of the Act confirms our holding that this is a suit which seeks both damages and injunctive relief. Mandamus will not issue to compel a public official to perform an official act unless the relator shows a clear legal right to the relief sought. Relator has failed to show authority under the provisions of Senate Bill No. 46 for the appointment of a substitute Judge.

It is appropriate to call attention to the fact that Section 17-a (Senate Bill 46) has been inserted as a Section of Article 1995, Vernon's Annotated Civil Statutes. Article 1995, supra, provides that "No person who is an inhabitant of this state shall be sued out of the county in which he has his domicile except in the following cases:" Then follow a number of exceptions, including the Section 17-a under discussion.

To hold that a substitute Judge must be appointed upon Ex Parte Motion would deprive the 44th District Court of the exercise of its jurisdictional or venue power without proof of any lawful reason for ordering a substitute for the judge. Section 17-a, supra, provides that "* * * The judge of the court in which suit is filed shall have full power to act in the case until receipt by him of a copy of an order of the Administrative Judge removing the case or appointing a substitute judge, and the provisions of this Act shall be cumulative of existing rights of the parties to a change of venue as authorized by law * * *."

The Act does not specifically provide a method of determining the necessity for ordering a substitute judge, but, in the absence of such provision, I content that allegations and proof should be required as provided in regard to a plea of privilege. Since the record in this case fails to make any proof of a disqualification of the judge of the court in which the case was filed, or any reason for the appointment of a substitute judge, the Presiding Judge correctly overruled the motion for the appointment of a Substitute Judge. To hold otherwise would render the provision for the appointment of a Substitute Judge in Senate Bill No. 46 as well as Section 6 in Senate Bill 45 unconstitutional. A duly elected District Judge has the constitutional right to conduct his court and control the court's docket. It would be a dangerous step to permit parties to a lawsuit without cause to displace a judge of a court. The courts hesitate to strike down an Act of the Legislature, and will not do so unless there is no alternative. However, the majority of this Court has rejected the idea expressed in this opinion that evidence should be required establishing a reason for removing the judge of the 44th District Court just as evidence is required on a plea of privilege. In my opinion, if some such procedure cannot be read into the Act, then, if the Legislature desires, it should amend the Act by writing into it a provision that the movant must establish a legal reason for the appointment of a Substitute Judge. It should be kept in mind that Senate Bill No. 46 does not authorize the appointment of a Substitute Judge in damage suits, but only in pure injunction suits. In the event

the Bill should be amended, as suggested, it would still be confined to suits asking for injunctive relief only.

This suit comes under the provisions of Senate Bill No. 45 in so far as determining the question of the nature of the suit is concerned. The Bill deals with damage suits, therefore, the plain provisions of the Act require that the petition for writ of mandamus be dismissed. However, granting for the purposes of this opinion that relators have the right to file the motion for the assignment of a District Judge by the Presiding Judge of the Administrative Judicial District, they are, nevertheless, not entitled to the writ of mandamus because they have failed to show a clear right thereto.

Section 6, Article 5154g, supra, means that the motion must be filed within two days after receipt of legal notice, that is, after service of citation or notice as otherwise provided by the Rules of Civil Procedure or the Statutes of this State. There is no conclusive evidence in this record showing the filing of a motion by all of the relators for the assignment of a District Judge to hear all proceedings in the cause within two days after legal notice of the institution of the suit. The relators' amended petition for writ of mandamus does allege that timely written application was filed pursuant to Senate Bill No. 46. This allegation is the equivalent of asserting that they filed their motion within five days after receipt of notice of the suit, but does not show a compliance with the provisions of Article 5154g, supra, which requires filing within two days. It is true there is in the record an affidavit of one of the defendants which shows that the motion was filed within two days after he was served with citation, but there were other defendants in the case and there is no showing that they were not served more than two days before the motion was filed. It is true that Section 6 says any party to any suit may file the motion, but there are ten relators in this suit, all of whom are asking this Court for relief by way of mandamus, but the fact that one of the relators has shown that he brought himself within the provisions of Section 6 of the Act does not mean that the writ should be granted. The relators as a group have filed a joint application for the writ and have failed to show a clear right thereto.

The prayer for Writ of Mandamus is denied.

Opionion delivered February 6, 1957.

Rehearing overruled March 13, 1957.