IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-08-00209-CV

 

In the
Interest of J.J.S., D.D.S., and L.S.,

Children,

 

 

 



From the 272nd District Court

Brazos County, Texas

Trial Court No. 07-000004-CVD-272

 



O p i n i o n



 

After the trial court entered a decree terminating
Laura S.’s[1] parental
rights with respect to her children, J.J.S., D.D.S., and L.S., and then determined
that her appeal is frivolous, Laura appeals the frivolousness determination.  See
Tex. Fam. Code Ann. § 263.405(g)
(Vernon Supp. 2007); In re S.T., --- S.W.3d ---, No. 10-07-00306-CV,
2008 Tex. App. LEXIS 3920 at *1 (Tex. App.—Waco May 28, 2008, pet. filed); In
re K.D., 202 S.W.3d 860, 866 (Tex. App.—Fort Worth 2006, no pet.).  We will
affirm the determination.








Procedural Background

              Following a three-day bench trial,
the court rendered judgment terminating the parent-child relationship between Laura
and three of her minor children.  The decree recites affirmative findings on
three predicate grounds for termination: (1) knowingly placing or allowing the
children to remain in conditions or surroundings which endangered their
physical or emotional well being; (2) engaging in conduct or knowingly placing
the children with persons who engaged in conduct which endangered the children;
and (3) failing to comply with the provisions of a court order establishing the
actions necessary for the return of the children.  See Tex. Fam. Code Ann. § 161.001(1)(D),
(E), (O) (Vernon Supp. 2007).

Laura filed a statement of points for appeal that
asserts:

1.        
The trial court erred in its
findings on the three predicate grounds for termination because the evidence is
legally and factually insufficient.

 

2.        
The trial court erred by
finding that terminating Laura’s parental rights was in the best interest of
the children when testimony by the Department of Protective and Family Service’s
(Department) child therapist favored allowing the father, Jon, to keep his
parental rights despite the fact that he has been indicted for sexual
molestation of L.S.  

 

3.        
The trial court erred by not
appointing Laura as possessory conservator with supervised visitation. 

 

4.        
Section 263.401 is
unconstitutional as applied to Laura because the statutory time limit prevented
her from complying with the Department’s parenting plan.

 

5.        
The Department failed to take
reasonable efforts to reunify the children with Laura. 

 

            The trial court ruled that the five
points quoted above “are frivolous as each finding of fact entered was made
based on the trial court’s assessment of the credibility of the witnesses at the
time of trial.”  See Tex. Fam.
Code Ann. § 263.405(d)(3) (Vernon Supp. 2007).  Further, the trial court
found that no credible evidence supported Laura’s contention that the findings
of fact were made arbitrarily or unreasonably under all the evidence presented
in this case.

Laura contends that the trial court abused its
discretion by finding that her points were frivolous and asks us to reverse the
trial court’s order.

Standard of Review

            Section 263.405(d)(3) requires a trial
court to determine whether “the appeal is frivolous as provided by Section
13.003(b), Civil Practice and Remedies Code.”  Tex. Civ. Prac. & Rem. Code Ann.  § 263.405(d)(3). 
Section 13.003(b) of the Civil Practice and Remedies Code provides, “In
determining whether an appeal is frivolous, a judge may consider whether the
appellant has presented a substantial question for appellate review.”  Id. § 13.003(b) (Vernon 2002).

            We review the court’s decision under
an abuse-of-discretion standard.  In re S.T., --- S.W.3d at ---, 2008 Tex. App. LEXIS 3920 at *1; In re M.N.V., 216 S.W.3d 833, 834 (Tex. App.—San Antonio
2006, no pet.); K.D., 202 S.W.3d at 866; In re H.D.H., 127 S.W.3d
921, 923 (Tex. App.—Beaumont 2004, no pet.).  “An appeal is frivolous when it
lacks an arguable basis in law or in fact.”  M.N.V., 216 S.W.3d at 834
(citing De La Vega v. Taco Cabana, Inc., 974 S.W.2d 152, 154 (Tex.
App.—San Antonio 1998, no pet.)); accord K.D., 202 S.W.3d at 866; H.D.H.,
127 S.W.3d at 923.

Dangerous Conduct

In her first point Laura contends that trial court
erred in its frivolousness finding because the evidence at trial was legally
and factually insufficient to support the court’s finding under section
161.001(1)(E) that she engaged in conduct which endangered the physical or
emotional well-being of her children.[2]  Laura
argues that she did not knowingly endanger the children by staying in an
abusive relationship with her ex-husband Jon because Jon was directly
responsible for the abuse.  She claims that it was Jon who was abusing her in
front of the children and Jon who was later indicted for sexual molestation of their
youngest daughter, L.S.  She also argues that because she voluntarily placed
her children in the care of the department, this shows that she did not
knowingly allow her children to remain in a dangerous environment.

            The Supreme Court has set forth the
applicable standard of review for a factual insufficiency complaint in a parental-rights
termination case.

[A]s we explained in In re C.H., a court of
appeals must give due consideration to evidence that the factfinder could
reasonably have found to be clear and convincing.  We also explained in that
opinion that the inquiry must be “whether the evidence is such that a
factfinder could reasonably form a firm belief or conviction about the truth of
the State’s allegations.”  A court of appeals should consider whether disputed
evidence is such that a reasonable factfinder could not have resolved that
disputed evidence in favor of its finding.  If, in light of the entire record,
the disputed evidence that a reasonable factfinder could not have credited in
favor of the finding is so significant that a factfinder could not reasonably
have formed a firm belief or conviction, then the evidence is factually
insufficient.

 

In re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002) (quoting In re C.H., 89
S.W.3d 17, 25 (Tex. 2002)) (footnotes omitted).

            Although the factual sufficiency of
the evidence is not the immediate complaint under review, we must bear in mind this
standard when evaluating whether Laura’s first point has an arguable basis in
law or in fact.  Thus, the issue before us is whether the court abused its
discretion by determining that the evidence is such that a factfinder could
have reasonably formed a firm belief or conviction that the Department’s
allegations are true.  See K.D., 202 S.W.3d at 867-68.

A parent may be found to have engaged in conduct which
endangers a child even if that conduct is not directed toward the child.  Tex. Dep’t of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987); Vasquez
v. Tex. Dep’t of Protective & Regulatory Servs., 190 S.W.3d 189, 195
(Tex. App.—Houston [1st Dist.] 2005, pet. denied); In re S.A.P., 169
S.W.3d 685, 702 (Tex. App.—Waco 2005, no pet.).  The requisite endangerment may
be found if the evidence shows a course of conduct by the parent which has the
effect of endangering the child.  Boyd, 727 S.W.2d at 534; Vasquez,
190 S.W.3d at 195; S.A.P., 169 S.W.3d at 702.

To endanger means to expose to loss or injury, to
jeopardize.  Boyd, 727 S.W.2d at 533; see also In re M.C., 917
S.W.2d 268, 269 (Tex. 1996).  Under subsection 161.001(1)(E), the relevant
inquiry is whether evidence exists that the endangerment of the child's
physical well-being was the direct result of the parent's conduct, including
acts, omissions, or failures to act.  S.A.P., 169 S.W.3d at 702; Dupree
v. Tex. Dep't Prot. & Reg. Servs., 907 S.W.2d 81, 83-84 (Tex. App.—Dallas
1995, no writ).  Termination under subsection 161.001(1)(E) must be based on
more than a single act or omission; a voluntary, deliberate, and conscious
course of conduct by the parent is required.  Boyd, 727 S.W.2d at
533-34.

While "endanger" means more than a
threat of metaphysical injury or the possible ill effects of a less-than-ideal
family environment, it is not necessary that the parent's conduct be directed
at the child or that the child actually suffer injury.  Id. at 533.  An
actual or concrete threat of injury to the child need not be proved. 
Director of Dallas County Child Prot. Servs. Unit of Tex. Dep't Human Servs. v.
Bowling, 833 S.W.2d 730, 733 (Tex. App.—Dallas 1992, no writ).  The
specific danger to a child's physical or emotional well-being need not be
established as an independent proposition, but it may be inferred from parental
misconduct.  See Boyd, 727 S.W.2d at 533.  The conduct need not
be aggressive behavior or physically abusive conduct; it can include emotional,
as well as physical endangerment.  S.A.P., 169 S.W.3d at 703.

            Case law interpreting section 161.001(1)(D)
and (E)[3] has
allowed for termination of the parent-child relationship for violent or
negligent conduct directed at the other parent or other children, even where
the behavior was not committed in the child's presence.  See In re
D.M., 58 S.W.3d 801, 811-12 (Tex. App.—Fort Worth 2001, no pet.) (holding that
if parent abuses or neglects other parent or children, that conduct can be used
to support finding of endangerment); Navarrette v. Texas Dep't of Human
Resources, 669 S.W.2d 849, 850 (Tex. App.—El Paso 1984, no writ) (upholding
termination of parental rights over child taken into custody from hospital
after birth, even though child was not subjected to deplorable living
conditions of six siblings); In re B.J.B., 546 S.W.2d 674, 676 (Tex.
Civ. App.—Texarkana 1977, writ ref'd n.r.e.) (father stabbed mother in kitchen
while daughters played in bedroom).

In Findings of Fact Nos. 9 and 21, the court found
that Laura’s testimony demonstrated that she conducted herself in a manner,
namely her abusive relationships, which exposed her children to a home where
physical violence was present.  This provided the court with clear and
convincing evidence that Laura had engaged in conduct which endangered the
physical and emotional well being of her children.  In Finding of Fact No. 10,
the court also found that Laura had been convicted of two counts of Child
Endangerment.

The trial court heard significant testimony
regarding the existence of family violence within the home.  At trial, Laura testified
regarding her previous child endangerment charges: shortly after being
prosecuted for criminally negligent homicide, for which she received six-months’
probation, Child Protective Services (CPS) became involved with her family.  Laura
informed CPS that she had pled guilty to two child endangerment charges in Milam County for intentionally crashing into her husband’s vehicle when he was inside it, while
her children watched.[4]  In
justifying her actions against Jon, she claimed that he had “beaten her up” on
that same day.  Laura also testified that during her marriage to Jon, they were
continually arguing and he slapped her.  She later tried to divorce him but
eventually continued the marriage only to have Jon’s violence increase.  Laura testified
that in 2005, she took her son H.W.G.[5] to Florida for a couple of months with Steve Franks, a man she was dating at the time.[6] 
She testified that while she was there, Franks became intoxicated and slapped
her and another little girl while H.W.G. was present.

Laura also testified that later in 2005, she filed
a protective order against Jon, but then had it dismissed because the couple
had gotten back together.  While Jon and Laura continued their cycles of
separating and getting back together, the children were moved repeatedly.[7] 
J.J.S. moved three times during his second-grade year and was forced to repeat
the second half because of his frequent absences.

Evidence of the negative influence of the abusive
home on the children is also found in the testimony of the CPS caseworkers and
therapists.  Sarah Hataway, a caseworker with the Department, testified that Laura
told her that Jon had beaten her many times and had even sexually assaulted
her.  Fran Duane, the children’s counselor, testified about their mental and emotional
well-being.  Duane testified that she diagnosed J.J.S. with adjustment
disorder, which affects his ability to function at school and his mood.  D.D.S.
was also diagnosed with adjustment disorder, but with a depressed mood, and exhibits
behaviors such as being overwhelmed, spontaneous crying, getting upset,
irritability, and altered eating habits.  She also testified that D.D.S.’s
former therapist had diagnosed her with general anxiety disorder.  According to
Duane, D.D.S.’s anxiety disorder was attributable to the domestic violence she
had been exposed to.  Duane testified that L.S. also has adjustment disorder
but with mixed emotions and conduct and optional defiant disorder by history.[8] 
This causes her to have significant behavioral problems.

            To summarize, the Department presented
evidence of the physical and emotional abuse present in the home.  The record
contains evidence that both Jon and Laura were violent towards each other when
the children were present.  Having reviewed the entire record, we find the
evidence of Laura’s conduct is such that the trial court as factfinder could
have reasonably formed a firm belief or conviction that Laura engaged in
conduct which endangered the physical and emotional well-being of her
children.  See In re J.F.C., 96 S.W.3d at 266.  Therefore,
we hold that the trial court did not abuse its discretion by concluding that
Laura's appeal of these issues would be frivolous.  See K.D., 202 S.W.3d
at 868; see also In re A.V. 113 S.W.3d 355, 361 (Tex. 2003).  Accordingly, we overrule Laura’s first point.

            Because we have found the evidence
factually sufficient to support the finding that Laura engaged in conduct which
endangered the physical and emotional well-being of her children, we need not
address the sufficiency of the evidence to support the remaining predicate
grounds to determine frivolousness.  See In re T.N.F., 205 S.W.3d
625, 629 (Tex. App.—Waco 2006, pet. denied); see also Tex. Fam. Code Ann. § 161.001 (Vernon Supp. 2007).

Best Interest 

For termination of the parent-child relationship,
the factfinder must make an affirmative finding: (1) on at least one predicate
ground for termination; and (2) that termination is in the best interest of the
child.  See Tex. Fam. Code Ann.
§ 161.001 (Vernon Supp. 2007).  The second point in Laura’s statement of points
on appeal asserts that the evidence is legally and factually insufficient to
support the court’s finding that termination is in her children’s best
interest.  Both legal and factual sufficiency reviews in termination cases must
take into consideration whether the evidence is such that a factfinder could
reasonably form a firm belief or conviction about the truth of the matter on
which the petitioner bears the burden of proof.  J.F.C., 96 S.W.3d at
264-68 (discussing legal sufficiency review); In re C.H., 89 S.W.3d 17,
25 (Tex. 2002) (discussing factual sufficiency review).

In a legal sufficiency review, a court should look
at all the evidence in the light most favorable to the finding to determine
whether a reasonable trier of fact could have formed a firm belief or conviction
that its finding was true.  To give appropriate deference to the factfinder’s
conclusions and the role of a court conducting a legal sufficiency review,
looking at the evidence in the light most favorable to the judgment means that
a reviewing court must assume that the factfinder resolved disputed facts in
favor of its finding if a reasonable factfinder could do so.  A corollary to
this requirement is that a court should disregard all evidence that a
reasonable factfinder could have disbelieved or found to have been incredible.  J.F.C.,
96 S.W.3d at 266.

In a factual sufficiency review, a court of
appeals must give due consideration to evidence that the factfinder could
reasonably have found to be clear and convincing.  Id.

[T]he inquiry must be “whether the evidence is
such that a factfinder could reasonably form a firm belief or conviction about
the truth of the State’s allegations.”  A court of appeals should consider
whether disputed evidence is such that a reasonable factfinder could not have resolved
that disputed evidence in favor of its finding.  If, in light of the entire
record, the disputed evidence that a reasonable factfinder could not have
credited in favor of the finding is so significant that a factfinder could not
reasonably have formed a firm belief or conviction, then the evidence is
factually insufficient.

 

Id. at
266-67 (footnotes and citations omitted); see C.H., 89 S.W.3d at 25.  We
view the evidence in a neutral light when reviewing for factual sufficiency.

In determining the best interest of a child, a
number of factors have been considered, including (1) the desires of the child;
(2) the emotional and physical needs of the child now and in the future; (3)
the emotional and physical danger to the child now and in the future; (4) the
parental abilities of the individuals seeking custody; (5) the programs
available to assist these individuals; (6) the plans for the child by these
individuals; (7) the stability of the home; (8) the acts or omissions of the
parent that may indicate the existing parent-child relationship is not a proper
one; and (9) any excuse for the acts or omissions of the parent.  Holley v.
Adams, 544 S.W.2d 367, 371-72 (Tex. 1976).  This list is not exhaustive,
but simply indicates considerations that have been or could be pertinent.  Id.

Laura argues that the evidence was insufficient to
support the trial court's best interest finding because the Department allowed
Jon to keep his parental rights.  Laura does not argue why it is in the best
interest of the children to remain in her care, only that Jon should not keep
his parental rights because he was the abuser and he has been indicted for the
sexual abuse of L.S.  The record shows that Jon agreed to give the Department
permanent managing conservatorship without termination while his sexual abuse
charges are pending.  Counsel for the Department stated that if Jon is found
guilty, the Department will pursue termination, but that it may also pursue
termination even if Jon is found not guilty.  Jon is currently allowed only supervised
visits with the children.

The record provides minimal insight into the
desires of the children.  Hataway testified that, on occasions, the children
ask to return home to their mother but at other times the children express a
desire to go back to certain foster parents.

As far as their emotional and physical well-being
is concerned, Marie Clark, the conservatorship supervisor for the Department,
testified that Laura’s children had very special emotional needs and that Laura
showed no progress in counseling that would enable her to meet those needs.  Clark also testified that Laura had not shown an ability to provide appropriate caregivers
for the children, specifically referencing two incidents.  The first was an
incident where Laura left the children home alone with her thirteen-year-old
son H.W.G, who then left the children home alone in the middle of the night to
go joyriding.  During the joyride, H.W.G. was involved in a car accident, and
Laura delayed seeking medical attention for him.

The second incident occurred after the Department
became involved in this case.  The Department asked Laura her placement
preferences for the children.  Laura requested that the children be placed at
her sister’s house.  Laura failed to tell the Department that M.D., a
registered sex offender she had previously caught molesting H.W.G., lived at
her sister’s house as well.

At trial, Duane noted the chronic issues suffered
by the children because of the abuse and instability in Laura’s home.  Duane
recommended adoption of the children into a stable home environment over
allowing Laura to keep her parental rights.  Hataway testified that a major
reason why the children were originally removed from the home was due to
instability in their lives because of Laura’s inability to parent.  Hataway
spoke with Laura’s therapist, who said that Laura had not made any progress towards
the Department’s goals.  In her opinion, reunifying the children with Laura
would simply place the children back in the same environment from which they
were removed.

In sum, the Department staff and therapists all
testified that termination would be in the children’s best interest because of
Laura’s instability and history of abusive relationships.  Reviewing the
factors that weigh in favor of and against termination, we find the evidence legally
and factually sufficient to support termination of Laura's parental rights
under the clear and convincing evidence standard because the evidence
established that Laura (1) had a history of staying in abusive relationships, and
(2) made little to no progress with the Department’s family service plan. 
Furthermore, multiple specialists considered there to be a high risk of danger
to the children’s mental and emotional well-being, now and in the future.  See
Vasquez, 190 S.W.3d at 195.  In addition, the Department presented
evidence indicating that Laura was aware that Jon posed a risk to the children before
the alleged assault of L.S. occurred.  Cf. In re A.B., 125 S.W.3d 769,
775-78 (Tex. App.—Texarkana 2003, pet. denied) (upholding termination finding
as in child’s best interest when evidence showed parent was aware that
children's environment put them at risk for sexual assault).

Therefore, we hold that the trial court did not
abuse its discretion by concluding that Laura's appeal of these issues would be
frivolous.  See D.M., 58 S.W.3d at 817; T.N.F., 205 S.W.3d at 629. 
We overrule Laura’s second point.

Remaining Points of Appeal 

We turn now to Laura’s remaining points of appeal
in which she challenges the constitutionality of Section 263.041 and the
Department’s efforts to reunite her with her children.  Laura’s fourth point of
appeal argues without explanation that Section 263.401 is unconstitutional as
applied to her because the statutory time limit prevented her from complying
with the Department’s family service plan.  Because of our disposition on the
first and second issues, we need not reach her constitutional question.  We do
not reach constitutional issues unless absolutely required to do so to resolve
the appeal.  San Antonio General Drivers, Helpers Local No. 657 v. Thornton,
156 Tex. 641, 647, 299 S.W.2d 911, 915 (1957).  Further, Laura does not argue
how the statute has been unconstitutionally applied.  She merely argues that it
is unconstitutional without providing any authority.  We overrule Laura’s
fourth issue.

Laura’s third and fifth points argue that the
trial court abused its discretion when it failed to appoint her as possessory
conservator and require the Department to make reasonable efforts to reunify
her with her children.  Laura argues that like in Steed and its progeny,
the evidence was insufficient to warrant an emergency taking without a court
order.  See In re Steed, --- S.W.3d ---, No. 03-08-00235-CV, 2008
Tex. App. WL 2132014 at *3 (Tex. App.—Austin, May 22, 2008, orig. proceeding); see
also In re Tex. Dept. of Fam. & Prot. Serv’s., 255 S.W.3d 613, 615
(Tex. 2008) (orig. proceeding).  According to Laura, the sole reason why the
Department removed the children was because of her pending criminal charges.  She
argues that because these charges did not involve any danger to the children,
they did not warrant emergency removal.  The temporary order granted by the
trial court states that the Department became involved in the case, not because
of Laura’s previous criminal history, but because Laura reported the outcry
made by L.S.  

Laura’s case is distinguishable from Steed for
two reasons.  First, there was evidence that Laura had allowed her children to
be subjected to sexual abuse.  Second, all of Laura’s children were directly
affected by the physical abuse witnessed in her household.  In Steed,
the Department went to the Yearning For Zion ranch to investigate a distress
call from a sixteen year-old girl.  Tex. Dept. of Fam. & Prot.
Serv’s., 255 S.W.3d at 613.  After interviewing a number of children, investigators
concluded that there were five minors who were or had been pregnant and that
the belief system of the community allowed minor females to marry and bear children.
 Id.  They then removed all 468 of the children in the community
(including infants) from their homes and ultimately separated the children from
their parents.

The appellate court in Steed set aside the
trial court’s order of removal, and the Texas Supreme Court agreed because the
Department failed to present evidence of danger or harm with respect to every
child in the community.  Id.  No evidence was presented on the potential
danger to any male children or any female children who had not reached puberty.
 Id.  The Department also did not show that any of the five pregnant
minors lived in the same household as the children represented in the mandamus. 
 Id.  The Department was only able to show that the children who were
taken into custody lived at the Yearning For Zion ranch and they were living
with people who share a "pervasive belief system" that condones
underage marriage and underage pregnancy.

The Department presented evidence in Laura’s case
that L.S. had accused Jon of inappropriately touching her on two separate
occasions.  Evidence was also presented that in 2004 Laura reported that Jon
had inappropriately touched D.S. when the two were taking a bath together.  This
is sufficient evidence to conclude that all of the children were in
"immediate" or "urgent" danger as contemplated by section
262.201.  In re M.L.J., --- S.W.3d ---, No. 02-07-00178-CV, 2008 Tex.
App. LEXIS 3218 (Tex. App.—Fort Worth May 1, 2008 pet. filed) (removal upheld
when there was a risk or fear of abuse as opposed to actual abuse or neglect).

The Department also made reasonable efforts to
reunite Laura with her children.  After the children were removed, the
Department put Laura on a family service plan so that she could work toward
getting her children back.  Hataway testified that the Department reviews
progress on the service plan on an ongoing basis, even after the Department
pursues termination.  Laura, unlike the mothers of the YFZ Ranch, had many
opportunities to show progress on her family service plan and regain custody of
her children.  Hataway testified that unless Laura made progress on her service
plan, she could not regain custody of the children.  Because Duane reported to
the Department and testified at trial that Laura made insufficient progress on
the plan, re-unification could not occur and the Department pursued termination. 
Because the Department made reasonable efforts to reunite Laura with her
children, we cannot say that the trial court erred in finding this point
frivolous.  See In re K.M.B., 91 S.W.3d 18, 25 (Tex. App.—Fort Worth
2002, no pet.); see also In re E.A.W.S., No. 02-06-00031-CV, 2006 Tex.
App. LEXIS 10515, at *61 (Tex. App.—Fort Worth Dec. 7, 2006, pet. denied) (mem.
op.) (noting that reasonable efforts to reunite parent and child can be
satisfied through preparation and administration of service plans).  We thus overrule
Laura’s third and fifth points.

Conclusion

The court did not abuse its discretion by
determining that Laura’s five points for appeal are frivolous.  Therefore, we
affirm the order determining that Laura’s appeal is frivolous.

 

 

BILL VANCE

Justice

 

 

Before Chief Justice
Gray,

            Justice
Vance, and

            Justice Reyna

            (Chief
Justice Gray concurs in judgment via a note.  A separate opinion will not
issue.)*  

Affirmed 

Opinion delivered and
filed October 22, 2008

[CV06]

 

 

 

*
(Appeals of State initiated
termination proceedings in which the parental rights of a parent have been
terminated have been a challenge for the trial courts, the appellate courts,
and the legislature.  There are strong and competing objectives.  The
rights of the parents must be recognized and protected.  The State’s
interest in protecting the child must likewise be recognized and protected.  But
the need to promptly bring certainty to the lives of children in view of these
potentially competing interests has been difficult to attain.  The
legislature has attempted to expedite the process by the imposition of rigid
deadlines and limited and expedited review of judgments terminating parental
rights.  As part of this appellate process, the trial court judge must
determine if the attempted appeal is frivolous if the parent whose rights have
been terminated is indigent.  If the appeal is determined to be frivolous,
the parent is not entitled to a free record.  In this proceeding, the
trial court determined that the parent whose rights had been terminated was
indigent and entitled to a free record but also determined that the appeal was
frivolous.  These determinations are inconsistent and in conflict. 
The Court has proceeded, nevertheless, to treat this as an appeal of solely the
frivolousness determination.

Whatever the Opinion is, it is not a decision on
the single issue presented in the brief—did the trial court abuse its
discretion in determining the appeal is frivolous.  I am not sure it
should be because the frivolousness determination is inconsistent with the
determination that appellant is entitled to a free record.  Accordingly, I
would proceed to review the merits of the five issues presented in the
statement of points, as the Court has actually done, overrule each and affirm
the trial court’s judgment of termination.  With these comments, and to
that extent only, I join the judgment of the Court.)









[1]           We use fictitious names for the parents in accordance
with recently amended Rule of Appellate Procedure 9.8(b).  Tex. R. App. P. 9.8(b).

 





[2]               We construe this to be a complaint
that there is factually insufficient evidence to support the trial court’s first
predicate ground for termination of her parental rights.





[3]               Under Texas Family
Code section 161.001(1)(D) and (E) the court may involuntarily terminate the
parent-child relationship if the court finds: 

(1)           the parent has: . .
.

 

(D)          knowingly placed or
knowingly allowed the child to remain in conditions or surroundings which endanger
the physical and emotional well-being of the child; or 

 

(E)           engaged in conduct
or knowingly placed the child with persons who engaged in conduct which
endangers the physical or emotional well-being of the child; 

 

Tex. Fam. Code Ann. § 161.001(1)(D), (E). 





[4]               Laura was also convicted of
aggravated assault with a deadly weapon for the same incident; she served six
weeks in county jail.





 

[5]               A child from a previous
relationship.  





 

[6]               While Laura was in Florida, she left J.J.S., D.D.S., and L.S. in Georgia with Jon.  





 

[7]               When asked about where she was
living in 2005 Laura testified “me and Jon had got back together and split up
so many times it’s confusing to me.  I believe I had a house on Waverly Street in 2005.” 





[8]               According to Duane, oppositional
defiance causes children to directly defy someone for no reason or gain and
causes them to lie for no reason.