**In re TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES, Relator.**

No. 08–0391.

Supreme Court of Texas.

May 29, 2008.

Trevor Allen Woodruff, Duke Elton Hooten, Michael C. Shulman, and Carey D. Cockerell, for Texas Department of Family and Protective Services.

Amy Warr, Robert W. Doggett, Julie Michele Balovich, Amanda Jane Chisholm, and Douglas W. Alexander, for Sara Steed.

PER CURIAM.

The Yearning for Zion Ranch is a 1,700–acre complex near Eldorado, Texas, that is home to a large community associated with the Fundamentalist Church of Jesus Christ of Latter Day Saints. On March 29, 2008, the Texas Department of Family Protective Services received a telephone call reporting that a sixteen-year-old girl named Sarah was being physically and sexually abused at the Ranch. On April 3, about 9:00 p.m., Department investigators and law enforcement officials entered the Ranch, and throughout the night they interviewed adults and children and searched for documents. Concerned that the community had a culture of polygamy and of directing girls younger than eighteen to enter spiritual unions with older men and have children, the Department took possession of all 468 children at the

Ranch without a court order.[1] The Department calls this "the largest child protection case documented in the history of the United States." It never located the girl Sarah who was the subject of the March 29 call.

The Department then filed several suits affecting the parent-child relationship ("SAPCRs")[2] requesting emergency orders removing the children from their parents and limiting the parents' access to the children. The Department also requested appointment as temporary sole managing conservator of the children, genetic testing, and permanent relief. On April 17–18, the district court conducted the adversary hearing required by section 262.201(a) of the Texas Family Code.[3] Subsections (b) and (c) state in relevant part:

(b) At the conclusion of the full adversary hearing, the court shall order the return of the child to the parent ... entitled to possession unless the court finds sufficient evidence to satisfy a person of ordinary prudence and caution that:

(1) there was a danger to the physical health or safety of the child which was caused by an act or failure to act of the person entitled to possession and for the child to remain in the home is contrary to the welfare of the child;

(2) the urgent need for protection required the immediate removal of the child and reasonable efforts, consistent with the circumstances and providing for the safety of the child, were made to eliminate or prevent the child's removal; and

(3) reasonable efforts have been made to enable the child to return home, but there is a substantial risk of a continuing danger if the child is returned home.

(c) If the court finds sufficient evidence to satisfy a person of ordinary prudence and caution that there is a continuing danger to the physical health or safety of the child and for the child to remain in the home is contrary to the

---

1. *See* TEX. FAM. CODE § 262.104(a) ("If there is no time to obtain a temporary restraining order or attachment before taking possession of a child consistent with the health and safety of that child, an authorized representative of the Department of Family and Protective Services ... may take possession of a child without a court order under the following conditions, only: (1) on personal knowledge of facts that would lead a person of ordinary prudence and caution to believe that there is an immediate danger to the physical health or safety of the child; (2) on information furnished by another that has been corroborated by personal knowledge of facts and all of which taken together would lead a person of ordinary prudence and caution to believe that there is an immediate danger to the physical health or safety of the child; (3) on personal knowledge of facts that would lead a person of ordinary prudence and caution to believe that the child has been the victim of sexual abuse; (4) on information furnished by another that has been corroborated by personal knowledge of facts and all of which taken

together would lead a person of ordinary prudence and caution to believe that the child has been the victim of sexual abuse....").

2. *See* TEX. FAM. CODE § 262.105(a) ("When a child is taken into possession without a court order, the person taking the child into possession, without unnecessary delay, shall: (1) file a suit affecting the parent-child relationship; (2) request the court to appoint an attorney ad litem for the child; and (3) request an initial hearing to be held by no later than the first working day after the date the child is taken into possession.").

3. Section 262.201(a) provides: "Unless the child has already been returned to the parent, managing conservator, possessory conservator, guardian, caretaker, or custodian entitled to possession and the temporary order, if any, has been dissolved, a full adversary hearing shall be held not later than the 14th day after the date the child was taken into possession by the governmental entity."

welfare of the child, the court shall issue an appropriate temporary order under Chapter 105.

The hearing was attended by scores of attorneys for the parties, attorneys ad litem, guardians ad litem, Texas Court Appointed Special Advocates (CASA), and many others. The hearing was conducted in the courtroom in San Angelo with overflow participants in the city auditorium. At the conclusion of the hearing, the district court issued temporary orders continuing the Department's custody of the children and allowing for visitation by the parents only with the Department's agreement.

Thirty-eight mothers petitioned the court of appeals for review by mandamus, seeking return of their 126 children. The record reflects that at least 117 of the children are under 13 and that two boys are 13 and 17. The ages of the other seven, at least two of whom are boys, are not shown. Concluding that the Department had failed to meet its burden of proof under section 262.201(b)(1), the court of appeals directed the district to vacate its temporary orders granting the Department custody. *In re Steed*, 2008 WL 2132014 (Tex.App.–Austin 2008, orig. proceeding) (mem.op.).

The Department petitioned this Court for review by mandamus. Having carefully examined the testimony at the adversary hearing and the other evidence before us, we are not inclined to disturb the court of appeals' decision. On the record before us, removal of the children was not warranted. The Department argues without explanation that the court of appeals' decision leaves the Department unable to protect the children's safety, but the Family Code gives the district court broad authority to protect children short of separating them from their parents and placing them in foster care. The court may make and modify temporary orders "for the safety and welfare of the child,"[4] including an order "restraining a party from removing the child beyond a geographical area identified by the court."[5] The court may also order the removal of an alleged perpetrator from the child's home[6] and may issue orders to assist the Department in its investigation.[7] The Code prohibits interference with an investigation,[8] and a person who relocates a residence or conceals a child with the intent to interfere with an investigation commits an offense.[9]

While the district court must vacate the current temporary custody orders as directed by the court of appeals, it need not do so without granting other appropriate relief to protect the children, as the mothers involved in this proceeding concede in response to the Department's motion for emergency relief. The court of appeals' decision does not conclude the SAPCR proceedings.

Although the SAPCRs involve important, fundamental issues concerning parental rights and the State's interest in protecting children, it is premature for us to address those issues. The Department's petition for mandamus is denied.

JUSTICE O'NEILL filed an opinion concurring in part and dissenting in part, in which JUSTICE JOHNSON and JUSTICE WILLETT joined.

4. *Id.* § 105.001(a); *see id.* § 262.205.

5. *Id.* § 105.001(a)(4).

6. *Id.* § 262.1015.

7. *Id.* § 261.303(b)-(c).

8. *Id.* § 261.303(a).

9. *Id.* § 261.3032.

Justice O'NEILL, joined by Justice JOHNSON and Justice WILLETT, concurring in part and dissenting in part.

In this case, the Department of Family and Protective Services presented evidence that "there was a danger to the physical health or safety" of pubescent girls on the Yearning for Zion (YFZ) Ranch from a pattern or practice of sexual abuse, that "the urgent need for protection required the immediate removal" of those girls, and that the Department made reasonable efforts, considering the obstacles to information-gathering that were presented, to prevent removal and return those children home. TEX. FAM.CODE § 262.201(b)(1)-(3). As to this endangered population, I do not agree with the Court that the trial court abused its discretion in allowing the Department to retain temporary conservatorship until such time as a permanency plan designed to ensure each girl's physical health and safety could be approved. *See id.* §§ 263.101–.102. On this record, however, I agree that there was no evidence of imminent "danger to the physical health or safety" of boys and pre-pubescent girls to justify their removal from the YFZ Ranch, and to this extent I join the Court's opinion. *Id.* § 262.201(b)(1).

Evidence presented in the trial court indicated that the Department began its investigation of the YFZ Ranch on March 29th, when it received a report of sexual abuse of a sixteen-year-old girl on the property. On April 3rd, the Department entered the Ranch along with law-enforcement personnel and conducted nineteen interviews of girls aged seventeen or under, as well as fifteen to twenty interviews of adults. In the course of these interviews, the Department learned there were many polygamist families living on the Ranch; a number of girls under the age of eighteen living on the Ranch were pregnant or had given birth; both interviewed girls and adults considered no age too young for a girl to be "spiritually" married; and the Ranch's religious leader, "Uncle Merrill," had the unilateral power to decide when and to whom they would be married. Additionally, in the trial court, the Department presented "Bishop's Records"—documents seized from the Ranch—indicating the presence of several extremely young mothers or pregnant "wives" [1] on the Ranch: a sixteen-year-old "wife" with a child, a sixteen-year-old pregnant "wife," two pregnant fifteen-year-old "wives," and a thirteen-year-old who had conceived a child. The testimony of Dr. William John Walsh, the families' expert witness, confirmed that the Fundamentalist Church of Jesus Christ of Latter Day Saints accepts the age of "physical development" (that is, first menstruation) as the age of eligibility for "marriage." Finally, child psychologist Dr. Bruce Duncan Perry testified that the pregnancy of the underage children on the Ranch was the result of sexual abuse because children of the age of fourteen, fifteen, or sixteen are not sufficiently emotionally mature to enter a healthy consensual sexual relationship or a "marriage."

Evidence presented thus indicated a pattern or practice of sexual abuse of pu-

---

1. Although referred to as "wives" in the Bishop's Records, these underage girls are not legally married; rather, the girls are "spiritually" married to their husbands, typically in polygamous households with multiple other "spiritual" wives. Subject to limited defenses, a person who "engages in sexual contact" with a child younger than seventeen who is not his *legal* spouse is guilty of a sexual offense under the Texas Penal Code. *See* TEX. PENAL CODE § 21.11(a)-(b). Those who promote or assist such sexual contact, *see id.* § 7.02(a)(2), or cause the child to engage in sexual contact, *see id.* § 21.11(a)(1), may also be criminally liable.

bescent girls, and the condoning of such sexual abuse, on the Ranch[2]—evidence sufficient to satisfy a "person of ordinary prudence and caution" that other such girls were at risk of sexual abuse as well. *Id.* § 262.201(b). This evidence supports the trial court's finding that "there was a danger to the physical health or safety" of pubescent girls on the Ranch. *Id.* § 262.201(b)(1); *see id.* § 101.009 (" 'Danger to the physical health or safety of a child' includes exposure of the child to loss or injury that jeopardizes the physical health or safety of the child without regard to whether there has been an actual prior injury to the child."); *cf. Tex. Dep't of Human Servs. v. Boyd,* 727 S.W.2d 531, 533 (Tex.1987) (affirming the termination of parental rights for "endanger[ing] . . . the physical well-being of [a] child," and holding: "While we agree that 'endanger' means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury. Rather, 'endanger' means to expose to loss or injury; to jeopardize."). Thus, the trial court did not abuse its discretion in finding that the Department met section 262.201(b)(1)'s requirements.

Notwithstanding this evidence of a pattern or practice of sexual abuse of pubescent girls on the Ranch, the court of appeals held—and the Court agrees today—that the trial court abused its discretion in awarding temporary conservatorship to the Department because the Department failed to attempt legal steps, short of taking custody, to protect the children.

Based on the language of section 262.201 of the Family Code, I disagree. Subsections (b)(2) and (b)(3) of section 262.201 require the Department to demonstrate that "reasonable efforts, consistent with the circumstances and providing for the safety of the child, were made to eliminate or prevent the child's removal," TEX. FAM. CODE § 262.201(b)(2), and that "reasonable efforts have been made to enable the child to return home," *id.* § 262.201(b)(3). The Court suggests, consistent with the mothers' arguments in the court of appeals below, that the Department failed to adequately justify its failure to seek less-intrusive alternatives to taking custody of the children: namely, seeking restraining orders against alleged perpetrators under section 262.1015 of the Family Code, or other temporary orders under section 105.001 of the Family Code. *Id.* §§ 262.1015, 105.001.

However, the Family Code requires only that the Department make "reasonable efforts, consistent with the circumstances" to avoid taking custody of endangered children. *Id.* § 262.201(b)(2). Evidence presented in the trial court indicated that the actions of the children and mothers precluded the Department from pursuing other legal options. When the Department arrived at the YFZ Ranch, it was treated cordially and allowed access to children, but those children repeatedly pled "the Fifth" in response to questions about their identity, would not identify their birthdates or parentage, refused to answer questions about who lived in their homes, and lied about their names—sometimes several times. Answers from parents

---

**2.** The Family Code defines "abuse" to include "sexual conduct harmful to a child's mental, emotional, or physical welfare"—including offenses under section 21.11 of the Penal Code—as well as "failure to make a reasonable effort to prevent sexual conduct harmful to a child." TEX. FAM.CODE § 261.001(1)(E)-

(F). In determining whether there is a "continuing danger to the health or safety" of a child, the Family Code explicitly permits a court to consider "whether the household to which the child would be returned includes a person who . . . has sexually abused another child." *Id.* § 262.201(d).

were similarly inconsistent: one mother first claimed that four children were hers, and then later avowed that they were not. Furthermore, the Department arrived to discover that a shredder had been used to destroy documents just before its arrival.

Thwarted by the resistant behavior of both children and parents on the Ranch, the Department had limited options. Without knowing the identities of family members or of particular alleged perpetrators, the Department could not have sought restraining orders under section 262.1015 as it did not know whom to restrain. *See id.* § 262.1015. Likewise, it could not have barred any family member from access to a child without filing a verified pleading or affidavit, which must identify clearly the parent and the child to be separated. *See id.* § 105.001(c)(3) ("Except on a verified pleading or an affidavit ... an order may not be rendered ... excluding a parent from possession of or access to a child."). Furthermore, the trial court heard evidence that the mothers themselves believed that the practice of underage "marriage" and procreation was not harmful for young girls; the Department's witnesses testified that although the Department "always wants kids to be with their parents," they will only reunify children with their parents after "it's determined that [their parents] know and can express what it was in the first place that caused harm to their children." This is some evidence that the Department could not have reasonably sought to maintain custody with the mothers. Thus, evidence presented to the trial court demonstrated that the Department took reasonable efforts, consistent with extraordinarily difficult circumstances, to protect the children without taking them into custody. *Id.*

The record demonstrates that there was evidence to support the trial court's order

as it relates to pubescent female children. Although I agree with the Court that the trial court abused its discretion by awarding custody of male children and pre-pubescent female children to the Department as temporary conservator, I would hold that the trial court did not abuse its discretion as to the demonstrably endangered population of pubescent girls, and to this extent would grant the Department's petition for mandamus. Because the Court does not, I respectfully dissent.