

IN THE
TENTH COURT OF APPEALS

No. 10-08-00209-CV

IN THE INTEREST OF J.J.S., D.D.S., AND L.S.,
CHILDREN,

From the 272nd District Court
Brazos County, Texas
Trial Court No. 07-000004-CVD-272

O P I N I O N

After the trial court entered a decree terminating Laura S.'s[1] parental rights with respect to her children, J.J.S., D.D.S., and L.S., and then determined that her appeal is frivolous, Laura appeals the frivolousness determination. *See* TEX. FAM. CODE ANN. § 263.405(g) (Vernon Supp. 2007); *In re S.T.*, --- S.W.3d ---, No. 10-07-00306-CV, 2008 Tex. App. LEXIS 3920 at *1 (Tex. App.—Waco May 28, 2008, pet. filed); *In re K.D.*, 202 S.W.3d 860, 866 (Tex. App.—Fort Worth 2006, no pet.). We will affirm the determination.

---

[1] We use fictitious names for the parents in accordance with recently amended Rule of Appellate Procedure 9.8(b). TEX. R. APP. P. 9.8(b).

**Procedural Background**

Following a three-day bench trial, the court rendered judgment terminating the parent-child relationship between Laura and three of her minor children. The decree recites affirmative findings on three predicate grounds for termination: (1) knowingly placing or allowing the children to remain in conditions or surroundings which endangered their physical or emotional well being; (2) engaging in conduct or knowingly placing the children with persons who engaged in conduct which endangered the children; and (3) failing to comply with the provisions of a court order establishing the actions necessary for the return of the children. *See* TEX. FAM. CODE ANN. § 161.001(1)(D), (E), (O) (Vernon Supp. 2007).

Laura filed a statement of points for appeal that asserts:

1. The trial court erred in its findings on the three predicate grounds for termination because the evidence is legally and factually insufficient.

2. The trial court erred by finding that terminating Laura's parental rights was in the best interest of the children when testimony by the Department of Protective and Family Service's (Department) child therapist favored allowing the father, Jon, to keep his parental rights despite the fact that he has been indicted for sexual molestation of L.S.

3. The trial court erred by not appointing Laura as possessory conservator with supervised visitation.

4. Section 263.401 is unconstitutional as applied to Laura because the statutory time limit prevented her from complying with the Department's parenting plan.

5. The Department failed to take reasonable efforts to reunify the children with Laura.

The trial court ruled that the five points quoted above "are frivolous as each finding of fact entered was made based on the trial court's assessment of the credibility of the witnesses at the time of trial." *See* TEX. FAM. CODE ANN. § 263.405(d)(3) (Vernon Supp. 2007). Further, the trial court found that no credible evidence supported Laura's contention that the findings of fact were made arbitrarily or unreasonably under all the evidence presented in this case.

Laura contends that the trial court abused its discretion by finding that her points were frivolous and asks us to reverse the trial court's order.

### Standard of Review

Section 263.405(d)(3) requires a trial court to determine whether "the appeal is frivolous as provided by Section 13.003(b), Civil Practice and Remedies Code." TEX. CIV. PRAC. & REM. CODE ANN. § 263.405(d)(3). Section 13.003(b) of the Civil Practice and Remedies Code provides, "In determining whether an appeal is frivolous, a judge may consider whether the appellant has presented a substantial question for appellate review." *Id.* § 13.003(b) (Vernon 2002).

We review the court's decision under an abuse-of-discretion standard. *In re S.T.*, --- S.W.3d at ---, 2008 Tex. App. LEXIS 3920 at *1; *In re M.N.V.*, 216 S.W.3d 833, 834 (Tex. App.—San Antonio 2006, no pet.); *K.D.*, 202 S.W.3d at 866; *In re H.D.H.*, 127 S.W.3d 921, 923 (Tex. App.—Beaumont 2004, no pet.). "An appeal is frivolous when it lacks an arguable basis in law or in fact." *M.N.V.*, 216 S.W.3d at 834 (citing *De La Vega v. Taco Cabana, Inc.*, 974 S.W.2d 152, 154 (Tex. App.—San Antonio 1998, no pet.)); *accord K.D.*, 202 S.W.3d at 866; *H.D.H.*, 127 S.W.3d at 923.

**Dangerous Conduct**

In her first point Laura contends that trial court erred in its frivolousness finding because the evidence at trial was legally and factually insufficient to support the court's finding under section 161.001(1)(E) that she engaged in conduct which endangered the physical or emotional well-being of her children.[2] Laura argues that she did not knowingly endanger the children by staying in an abusive relationship with her ex-husband Jon because Jon was *directly* responsible for the abuse. She claims that it was Jon who was abusing her in front of the children and Jon who was later indicted for sexual molestation of their youngest daughter, L.S. She also argues that because she voluntarily placed her children in the care of the department, this shows that she did not knowingly allow her children to remain in a dangerous environment.

The Supreme Court has set forth the applicable standard of review for a factual insufficiency complaint in a parental-rights termination case.

> [A]s we explained in *In re C.H.*, a court of appeals must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. We also explained in that opinion that the inquiry must be "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." A court of appeals should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient.

---

[2] We construe this to be a complaint that there is factually insufficient evidence to support the trial court's first predicate ground for termination of her parental rights.

*In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002) (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)) (footnotes omitted).

Although the factual sufficiency of the evidence is not the immediate complaint under review, we must bear in mind this standard when evaluating whether Laura's first point has an arguable basis in law or in fact. Thus, the issue before us is whether the court abused its discretion by determining that the evidence is such that a factfinder could have reasonably formed a firm belief or conviction that the Department's allegations are true. *See K.D.*, 202 S.W.3d at 867-68.

A parent may be found to have engaged in conduct which endangers a child even if that conduct is not directed toward the child. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *Vasquez v. Tex. Dep't of Protective & Regulatory Servs.*, 190 S.W.3d 189, 195 (Tex. App.—Houston [1st Dist.] 2005, pet. denied); *In re S.A.P.*, 169 S.W.3d 685, 702 (Tex. App.—Waco 2005, no pet.). The requisite endangerment may be found if the evidence shows a course of conduct by the parent which has the effect of endangering the child. *Boyd*, 727 S.W.2d at 534; *Vasquez*, 190 S.W.3d at 195; *S.A.P.*, 169 S.W.3d at 702.

To endanger means to expose to loss or injury, to jeopardize. *Boyd*, 727 S.W.2d at 533; *see also In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996). Under subsection 161.001(1)(E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *S.A.P.*, 169 S.W.3d at 702; *Dupree v. Tex. Dep't Prot. & Reg. Servs.*, 907 S.W.2d 81, 83-84 (Tex. App.—Dallas 1995, no writ). Termination under

subsection 161.001(1)(E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *Boyd*, 727 S.W.2d at 533-34.

While "endanger" means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the parent's conduct be directed at the child or that the child actually suffer injury. *Id.* at 533. An actual or concrete threat of injury to the child need not be proved. *Director of Dallas County Child Prot. Servs. Unit of Tex. Dep't Human Servs. v. Bowling*, 833 S.W.2d 730, 733 (Tex. App.—Dallas 1992, no writ). The specific danger to a child's physical or emotional well-being need not be established as an independent proposition, but it may be inferred from parental misconduct. *See Boyd*, 727 S.W.2d at 533. The conduct need not be aggressive behavior or physically abusive conduct; it can include emotional, as well as physical endangerment. *S.A.P.*, 169 S.W.3d at 703.

Case law interpreting section 161.001(1)(D) and (E)[3] has allowed for termination of the parent-child relationship for violent or negligent conduct directed at the other

---

[3]    Under Texas Family Code section 161.001(1)(D) and (E) the court may involuntarily terminate the parent-child relationship if the court finds:
(1)    the parent has: . . .

   (D)    knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical and emotional well-being of the child; or

   (E)    engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;

TEX. FAM. CODE ANN. § 161.001(1)(D), (E).

parent or other children, even where the behavior was not committed in the child's presence. *See In re D.M.*, 58 S.W.3d 801, 811-12 (Tex. App.—Fort Worth 2001, no pet.) (holding that if parent abuses or neglects other parent or children, that conduct can be used to support finding of endangerment); *Navarrette v. Texas Dep't of Human Resources,* 669 S.W.2d 849, 850 (Tex. App.—El Paso 1984, no writ) (upholding termination of parental rights over child taken into custody from hospital after birth, even though child was not subjected to deplorable living conditions of six siblings); *In re B.J.B.,* 546 S.W.2d 674, 676 (Tex. Civ. App.—Texarkana 1977, writ ref'd n.r.e.) (father stabbed mother in kitchen while daughters played in bedroom).

In Findings of Fact Nos. 9 and 21, the court found that Laura's testimony demonstrated that she conducted herself in a manner, namely her abusive relationships, which exposed her children to a home where physical violence was present. This provided the court with clear and convincing evidence that Laura had engaged in conduct which endangered the physical and emotional well being of her children. In Finding of Fact No. 10, the court also found that Laura had been convicted of two counts of Child Endangerment.

The trial court heard significant testimony regarding the existence of family violence within the home. At trial, Laura testified regarding her previous child endangerment charges: shortly after being prosecuted for criminally negligent homicide, for which she received six-months' probation, Child Protective Services (CPS) became involved with her family. Laura informed CPS that she had pled guilty to two child endangerment charges in Milam County for intentionally crashing into her

husband's vehicle when he was inside it, while her children watched.[4]  In justifying her actions against Jon, she claimed that he had "beaten her up" on that same day.  Laura also testified that during her marriage to Jon, they were continually arguing and he slapped her.  She later tried to divorce him but eventually continued the marriage only to have Jon's violence increase.  Laura testified that in 2005, she took her son H.W.G.[5] to Florida for a couple of months with Steve Franks, a man she was dating at the time.[6] She testified that while she was there, Franks became intoxicated and slapped her and another little girl while H.W.G. was present.

Laura also testified that later in 2005, she filed a protective order against Jon, but then had it dismissed because the couple had gotten back together.  While Jon and Laura continued their cycles of separating and getting back together, the children were moved repeatedly.[7]  J.J.S. moved three times during his second-grade year and was forced to repeat the second half because of his frequent absences.

Evidence of the negative influence of the abusive home on the children is also found in the testimony of the CPS caseworkers and therapists.  Sarah Hataway, a caseworker with the Department, testified that Laura told her that Jon had beaten her many times and had even sexually assaulted her.  Fran Duane, the children's counselor,

---

[4]     Laura was also convicted of aggravated assault with a deadly weapon for the same incident; she served six weeks in county jail.

[5]     A child from a previous relationship.

[6]     While Laura was in Florida, she left J.J.S., D.D.S., and L.S. in Georgia with Jon.

[7]     When asked about where she was living in 2005 Laura testified "me and Jon had got back together and split up so many times it's confusing to me.  I believe I had a house on Waverly Street in 2005."

testified about their mental and emotional well-being. Duane testified that she diagnosed J.J.S. with adjustment disorder, which affects his ability to function at school and his mood. D.D.S. was also diagnosed with adjustment disorder, but with a depressed mood, and exhibits behaviors such as being overwhelmed, spontaneous crying, getting upset, irritability, and altered eating habits. She also testified that D.D.S.'s former therapist had diagnosed her with general anxiety disorder. According to Duane, D.D.S.'s anxiety disorder was attributable to the domestic violence she had been exposed to. Duane testified that L.S. also has adjustment disorder but with mixed emotions and conduct and optional defiant disorder by history.[8] This causes her to have significant behavioral problems.

To summarize, the Department presented evidence of the physical and emotional abuse present in the home. The record contains evidence that both Jon and Laura were violent towards each other when the children were present. Having reviewed the entire record, we find the evidence of Laura's conduct is such that the trial court as factfinder could have reasonably formed a firm belief or conviction that Laura engaged in conduct which endangered the physical and emotional well-being of her children. *See In re J.F.C.*, 96 S.W.3d at 266. Therefore, we hold that the trial court did not abuse its discretion by concluding that Laura's appeal of these issues would be frivolous. *See K.D.*, 202 S.W.3d at 868; *see also In re A.V*. 113 S.W.3d 355, 361 (Tex. 2003). Accordingly, we overrule Laura's first point.

---

[8] According to Duane, oppositional defiance causes children to directly defy someone for no reason or gain and causes them to lie for no reason.

Because we have found the evidence factually sufficient to support the finding that Laura engaged in conduct which endangered the physical and emotional well-being of her children, we need not address the sufficiency of the evidence to support the remaining predicate grounds to determine frivolousness. *See In re T.N.F.*, 205 S.W.3d 625, 629 (Tex. App.—Waco 2006, pet. denied); *see also* TEX. FAM. CODE ANN. § 161.001 (Vernon Supp. 2007).

### Best Interest

For termination of the parent-child relationship, the factfinder must make an affirmative finding: (1) on at least one predicate ground for termination; and (2) that termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001 (Vernon Supp. 2007). The second point in Laura's statement of points on appeal asserts that the evidence is legally and factually insufficient to support the court's finding that termination is in her children's best interest. Both legal and factual sufficiency reviews in termination cases must take into consideration whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the matter on which the petitioner bears the burden of proof. *J.F.C.*, 96 S.W.3d at 264-68 (discussing legal sufficiency review); *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002) (discussing factual sufficiency review).

In a legal sufficiency review, a court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal

sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so.  A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible.  *J.F.C.*, 96 S.W.3d at 266.

In a factual sufficiency review, a court of appeals must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing.  *Id.*

> [T]he inquiry must be "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations."  A court of appeals should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding.  If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient.

*Id.* at 266-67 (footnotes and citations omitted); *see C.H.*, 89 S.W.3d at 25.  We view the evidence in a neutral light when reviewing for factual sufficiency.

In determining the best interest of a child, a number of factors have been considered, including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent.  *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

This list is not exhaustive, but simply indicates considerations that have been or could be pertinent. *Id.*

Laura argues that the evidence was insufficient to support the trial court's best interest finding because the Department allowed Jon to keep his parental rights. Laura does not argue why it is in the best interest of the children to remain in her care, only that Jon should not keep his parental rights because he was the abuser and he has been indicted for the sexual abuse of L.S. The record shows that Jon agreed to give the Department permanent managing conservatorship without termination while his sexual abuse charges are pending. Counsel for the Department stated that if Jon is found guilty, the Department will pursue termination, but that it may also pursue termination even if Jon is found not guilty. Jon is currently allowed only supervised visits with the children.

The record provides minimal insight into the desires of the children. Hataway testified that, on occasions, the children ask to return home to their mother but at other times the children express a desire to go back to certain foster parents.

As far as their emotional and physical well-being is concerned, Marie Clark, the conservatorship supervisor for the Department, testified that Laura's children had very special emotional needs and that Laura showed no progress in counseling that would enable her to meet those needs. Clark also testified that Laura had not shown an ability to provide appropriate caregivers for the children, specifically referencing two incidents. The first was an incident where Laura left the children home alone with her thirteen-year-old son H.W.G, who then left the children home alone in the middle of the

night to go joyriding. During the joyride, H.W.G. was involved in a car accident, and Laura delayed seeking medical attention for him.

The second incident occurred after the Department became involved in this case. The Department asked Laura her placement preferences for the children. Laura requested that the children be placed at her sister's house. Laura failed to tell the Department that M.D., a registered sex offender she had previously caught molesting H.W.G., lived at her sister's house as well.

At trial, Duane noted the chronic issues suffered by the children because of the abuse and instability in Laura's home. Duane recommended adoption of the children into a stable home environment over allowing Laura to keep her parental rights. Hataway testified that a major reason why the children were originally removed from the home was due to instability in their lives because of Laura's inability to parent. Hataway spoke with Laura's therapist, who said that Laura had not made any progress towards the Department's goals. In her opinion, reunifying the children with Laura would simply place the children back in the same environment from which they were removed.

In sum, the Department staff and therapists all testified that termination would be in the children's best interest because of Laura's instability and history of abusive relationships. Reviewing the factors that weigh in favor of and against termination, we find the evidence legally and factually sufficient to support termination of Laura's parental rights under the clear and convincing evidence standard because the evidence established that Laura (1) had a history of staying in abusive relationships, and (2) made

little to no progress with the Department's family service plan. Furthermore, multiple specialists considered there to be a high risk of danger to the children's mental and emotional well-being, now and in the future. *See Vasquez*, 190 S.W.3d at 195. In addition, the Department presented evidence indicating that Laura was aware that Jon posed a risk to the children *before* the alleged assault of L.S. occurred. *Cf. In re A.B.,* 125 S.W.3d 769, 775-78 (Tex. App.—Texarkana 2003, pet. denied) (upholding termination finding as in child's best interest when evidence showed parent was aware that children's environment put them at risk for sexual assault).

Therefore, we hold that the trial court did not abuse its discretion by concluding that Laura's appeal of these issues would be frivolous. *See D.M.,* 58 S.W.3d at 817; *T.N.F.,* 205 S.W.3d at 629. We overrule Laura's second point.

## Remaining Points of Appeal

We turn now to Laura's remaining points of appeal in which she challenges the constitutionality of Section 263.041 and the Department's efforts to reunite her with her children. Laura's fourth point of appeal argues without explanation that Section 263.401 is unconstitutional as applied to her because the statutory time limit prevented her from complying with the Department's family service plan. Because of our disposition on the first and second issues, we need not reach her constitutional question. We do not reach constitutional issues unless absolutely required to do so to resolve the appeal. *San Antonio General Drivers, Helpers Local No. 657 v. Thornton*, 156 Tex. 641, 647, 299 S.W.2d 911, 915 (1957). Further, Laura does not argue how the statute

has been unconstitutionally applied. She merely argues that it is unconstitutional without providing any authority. We overrule Laura's fourth issue.

Laura's third and fifth points argue that the trial court abused its discretion when it failed to appoint her as possessory conservator and require the Department to make reasonable efforts to reunify her with her children. Laura argues that like in *Steed* and its progeny, the evidence was insufficient to warrant an emergency taking without a court order. *See In re Steed*, --- S.W.3d ---, No. 03-08-00235-CV, 2008 Tex. App. WL 2132014 at *3 (Tex. App.—Austin, May 22, 2008, orig. proceeding); *see also In re Tex. Dept. of Fam. & Prot. Serv's.*, 255 S.W.3d 613, 615 (Tex. 2008) (orig. proceeding). According to Laura, the sole reason why the Department removed the children was because of her pending criminal charges. She argues that because these charges did not involve any danger to the children, they did not warrant emergency removal. The temporary order granted by the trial court states that the Department became involved in the case, not because of Laura's previous criminal history, but because Laura reported the outcry made by L.S.

Laura's case is distinguishable from *Steed* for two reasons. First, there was evidence that Laura had allowed her children to be subjected to sexual abuse. Second, all of Laura's children were directly affected by the physical abuse witnessed in her household. In *Steed*, the Department went to the Yearning For Zion ranch to investigate a distress call from a sixteen year-old girl. *Tex. Dept. of Fam. & Prot. Serv's.*, 255 S.W.3d at 613. After interviewing a number of children, investigators concluded that there were five minors who were or had been pregnant and that the belief system of the

community allowed minor females to marry and bear children. *Id.* They then removed all 468 of the children in the community (including infants) from their homes and ultimately separated the children from their parents.

The appellate court in *Steed* set aside the trial court's order of removal, and the Texas Supreme Court agreed because the Department failed to present evidence of danger or harm with respect to every child in the community. *Id.* No evidence was presented on the potential danger to any male children or any female children who had not reached puberty. *Id.* The Department also did not show that any of the five pregnant minors lived in the same household as the children represented in the mandamus. *Id.* The Department was only able to show that the children who were taken into custody lived at the Yearning For Zion ranch and they were living with people who share a "pervasive belief system" that condones underage marriage and underage pregnancy.

The Department presented evidence in Laura's case that L.S. had accused Jon of inappropriately touching her on two separate occasions. Evidence was also presented that in 2004 Laura reported that Jon had inappropriately touched D.S. when the two were taking a bath together. This is sufficient evidence to conclude that all of the children were in "immediate" or "urgent" danger as contemplated by section 262.201. *In re M.L.J.*, --- S.W.3d ---, No. 02-07-00178-CV, 2008 Tex. App. LEXIS 3218 (Tex. App.—Fort Worth May 1, 2008 pet. filed) (removal upheld when there was a risk or fear of abuse as opposed to actual abuse or neglect).

The Department also made reasonable efforts to reunite Laura with her children. After the children were removed, the Department put Laura on a family service plan so that she could work toward getting her children back. Hataway testified that the Department reviews progress on the service plan on an ongoing basis, even after the Department pursues termination. Laura, unlike the mothers of the YFZ Ranch, had many opportunities to show progress on her family service plan and regain custody of her children. Hataway testified that unless Laura made progress on her service plan, she could not regain custody of the children. Because Duane reported to the Department and testified at trial that Laura made insufficient progress on the plan, re-unification could not occur and the Department pursued termination. Because the Department made reasonable efforts to reunite Laura with her children, we cannot say that the trial court erred in finding this point frivolous. *See In re K.M.B.,* 91 S.W.3d 18, 25 (Tex. App.—Fort Worth 2002, no pet.); *see also In re E.A.W.S.,* No. 02-06-00031-CV, 2006 Tex. App. LEXIS 10515, at *61 (Tex. App.—Fort Worth Dec. 7, 2006, pet. denied) (mem. op.) (noting that reasonable efforts to reunite parent and child can be satisfied through preparation and administration of service plans). We thus overrule Laura's third and fifth points.

**Conclusion**

The court did not abuse its discretion by determining that Laura's five points for appeal are frivolous. Therefore, we affirm the order determining that Laura's appeal is frivolous.

BILL VANCE
Justice


Before Chief Justice Gray,
 Justice Vance, and
 Justice Reyna
 (Chief Justice Gray concurs in judgment via a note.  A separate opinion will not issue.)*
Affirmed
Opinion delivered and filed October 22, 2008
[CV06]



* (Appeals of State initiated termination proceedings in which the parental rights of a parent have been terminated have been a challenge for the trial courts, the appellate courts, and the legislature.  There are strong and competing objectives.  The rights of the parents must be recognized and protected.  The State's interest in protecting the child must likewise be recognized and protected.  But the need to promptly bring certainty to the lives of children in view of these potentially competing interests has been difficult to attain.  The legislature has attempted to expedite the process by the imposition of rigid deadlines and limited and expedited review of judgments terminating parental rights.  As part of this appellate process, the trial court judge must determine if the attempted appeal is frivolous if the parent whose rights have been terminated is indigent.  If the appeal is determined to be frivolous, the parent is not entitled to a free record.  In this proceeding, the trial court determined that the parent whose rights had been terminated was indigent and entitled to a free record but also determined that the appeal was frivolous.  These determinations are inconsistent and in conflict.  The Court has proceeded, nevertheless, to treat this as an appeal of solely the frivolousness determination.

 Whatever the Opinion is, it is not a decision on the single issue presented in the brief—did the trial court abuse its discretion in determining the appeal is frivolous.  I am not sure it should be because the frivolousness determination is inconsistent with the determination that appellant is entitled to a free record.  Accordingly, I would proceed to review the merits of the five issues presented in the statement of points, as the Court has actually done, overrule each and affirm the trial court's judgment of termination.  With these comments, and to that extent only, I join the judgment of the Court.)