

# IN THE
# TENTH COURT OF APPEALS

_____

## No. 10-15-00040-CV

## IN THE INTEREST OF R.M., B.M., AND N.M., CHILDREN,

_____

**From the County Court at Law No. 1
Johnson County, Texas
Trial Court No. D201300117**

## MEMORANDUM OPINION

Carrie M. appeals from a judgment that terminated the parent-child relationship between her and her children, R.M., B.M., and N.M.[1]   After hearing all the evidence, the trial court found by clear and convincing evidence that Carrie (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endanger the children, and (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangers the children.  TEX. FAM. CODE ANN. § 161.001 (1) (D) (E) (West Supp. 2012).  The trial court further found by clear and convincing evidence that termination was in the best interest of the children.  We affirm.

---

[1] The trial court's order of termination also terminates the parental rights of Jason Long, Lewis Green, and Unknown Father; however, they are not parties to this appeal.

**Facts**

At the time of trial, R.M. was 15 years-old, B.M. was 7 years-old, and N.M was almost 2 years-old. The Texas Department of Family and Protective Services began an investigation in January 2013 at the time N.M. was born, and the investigation revealed that Carrie had a history of substance abuse. The Department recommended Family Based Services at that time. A subsequent safety plan required the children to live with Carrie's mother, Lawanna Pruitt, and prohibited Carrie from having unsupervised contact with the children.

Sergeant Richard Hogan testified that he has been to the residence where Carrie and Lawanna lived on multiple occasions in response to calls. Sergeant Hogan stated that he had concerns with drug use and fighting at the home. Sergeant Hogan responded to a call at the home on April 23, 2013, and there were allegations that Carrie and N.M, who was less than a year old at the time, were punched by a friend of Carrie's. Sergeant Hogan later learned that Carrie was not allowed to be with the children unsupervised.

Sergeant Hogan again responded to a call at the home on July 8, 2013, and he made an arrest of a person at the residence for possession of drug paraphernalia. Sergeant Hogan returned to the address on July 10, 2013, with workers from the Department. When they arrived at the residence, R.M. and B.M. showed them used syringes in the trash can. Sergeant Hogan collected those syringes, and they tested positive for methamphetamine. Sergeant Hogan testified that the children had access to those syringes containing methamphetamine.

Kayce Farmer with the Department testified that she became involved with the family after the birth of N.M. Carrie admitted using methamphetamine while she was pregnant with N.M. Pursuant to the safety plan, Carrie was not allowed unsupervised contact with the children. Farmer testified that Carrie violated the safety plan by having unsupervised contact with the children, and Carrie also violated the safety plan by her admitted use of narcotics. A strand of N.M.'s hair tested positive for the presence of methamphetamine and amphetamine. A strand of B.M.'s hair tested positive for the presence of amphetamine.

Carrie testified at trial and admitted to using methamphetamine, cocaine, and marijuana. She stated that she used drugs while her children were in the home with her and that she used drugs while pregnant with N.M. and while breast feeding N.M. Carrie said that the syringes found by Sergeant Hogan did not belong to her, but she did admit to using methamphetamine on that day. Carrie stated that she had unsupervised visits with the children because her mother, Lawanna, had to be at work. Carrie testified that she completed parenting classes, that she attended all scheduled visitation with the children after their removal, and that she is currently employed.

### Standard of Review

In six issues Carrie argues that the evidence is legally and factually insufficient to support the trial court's findings on each of the grounds for termination. Only one predicate act under section 161.001(1) is necessary to support a judgment of termination in addition to the required finding that termination is in the child's best interest. *In re*

*A.V.*, 113 S.W.3d 355, 362 (Tex.2003). In conducting a legal sufficiency review in a parental termination case:

> [A] court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. To give appropriate deference to the factfinder's conclusion and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to be incredible. This does not mean that a court must disregard *all* evidence that does not support the finding. Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence.

*In re J.P.B.*, 180 S.W.3d 570, 573 (Tex.2005) (per curiam) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)) (emphasis in *J.P.B.*).

> In a factual sufficiency review,

> [A] court of appeals must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing.... [T]he inquiry must be "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." A court of appeals should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient.

*In re J.F.C.*, 96 S.W.3d 256, 266-67 (Tex.2002) (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex.2002)) (internal footnotes omitted) (alterations added).

## Endangerment

In the third and fourth issues, Carrie argues that the evidence is legally and factually insufficient to support the trial court's finding that she engaged in conduct or knowingly placed her children with persons who engaged in conduct that endangered the physical and emotional well-being of the children. Section 161.001 (E) of the Texas Family Code allows termination of the parent-child relationship if the parent, "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. 161.001 (E) (West Supp. 2012).

"Endanger" means "to expose to loss or injury; to jeopardize." *Texas Department of Human Services v. Boyd*, 727 S.W.2d 531, 533 (Tex.1987). A parent may be found to have engaged in conduct which endangers a child even if that conduct is not directed toward the child. *Texas Department of Human Services v. Boyd*, 727 S.W.2d at 533; *In re J.J.S.*, 272 S.W.3d 74, 78 (Tex. App.-Waco 2008, no pet.). Termination under subsection 161.001(1)(E) must be based on more than a single act or omission. *In re J.J.S.*, 272 S.W.3d at 78. The requisite endangerment may be found if the evidence shows a course of conduct by the parent which has the effect of endangering the child. *Texas Department of Human Services v. Boyd*, 727 S.W.2d at 534; *In re J.J.S.*, 272 S.W.3d at 78.

A parent's drug use can also qualify as a voluntary, deliberate, and conscious course of conduct endangering the child's well-being. *See In re C.A.B.*, 289 S.W.3d 874, 885 (Tex. App.-Houston [14th Dist.] 2009, no pet.). A parent's use of narcotics and its

effect on his or her ability to parent may qualify as an endangering course of conduct. *In re, J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009).

Carrie admitted to using methamphetamine while pregnant with N.M. and while breast feeding N.M. Both R.M. and B.M. were in her care at the time of her admitted drug use. In July 2013, there was a safety plan in place that provided Carrie was not to have unsupervised visitation with the children; however, Carrie admitted to using methamphetamine at that time while the children were with her in the home unsupervised. R.M. and B.M. were aware of the drug use and showed Sergeant Hogan used syringes that contained methamphetamine. Carrie admitted to drug use in 2014, after an emergency removal of the children and the appointment of the Department as temporary managing conservator of the children. Carrie did not submit to drug testing as requested by the Department on more than one occasion. *See In re C.R.*, 263 S.W.3d 368, 374 (Tex.App. – Dallas 2008, no pet.) (The trial court could reasonably infer parent avoided taking the drug tests because she was using drugs.).

The record shows that during the period of time Carrie admitted to drug use, the children were exposed to other persons who used drugs, that the children were exposed to altercations, and that the children were involved in altercations. N.M. tested positive for the presence of methamphetamine and amphetamine, and B.M. tested positive for the presence of amphetamine. The evidence supports a conclusion that drug use adversely affected Carrie's ability to parent. *See In re D.W.J.*, 394 S.W.3d 210, 221(Tex.App.-Houston [1st Dist.) 2012, no pet.). We find that the evidence is legally and factually sufficient to support the trial court's finding that Carrie engaged in conduct that endangered the

physical and emotional well-being of the children. We overrule the third and fourth issues. Because we find that evidence is legally and factually sufficient to support the trial court's finding of a predicate act pursuant to Section 161.001(1) (E), we need not reach the first and second issues.

**Best Interest**

In the fifth and sixth issues, Carrie complains that the evidence is legally and factually insufficient to support the trial court's finding that termination is in the best interest of the children. In determining the best interest of a child, a number of factors have been considered, including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex.1976); *In re S.L.*, 421 S.W.3d 34, 38 (Tex.App.-Waco 2013, no pet.). The *Holley* factors focus on the best interest of the child, not the best interest of the parent. *In re S.L.*, 421 S.W.3d at 38. The goal of establishing a stable permanent home for a child is a compelling state interest. *Id*. The need for permanence is a paramount consideration for a child's present and future physical and emotional needs. *Id*.

R.M. currently resides at the Willow Bend Center, a treatment center for boys with behavioral issues. R.M. has expressed a desire to return home to his mother. R.M.'s

therapist at Willow Bend testified that R.M. has a history of abuse and that he has extreme anger and defiant behaviors. The therapist stated that R.M. needs therapy and structure. He cannot be alone with other children. The therapist recommends that R.M. stay in his current placement.

B.M. currently resides in a foster home and has expressed a desire to return home to his mother. B.M. receives weekly counseling sessions in his current placement. B.M. has made comments concerning cutting his sister, N.M., and watching her bleed. He has exhibited inappropriate sexual behavior and requires supervision around other children. The Department's goal for B.M. is adoption.

N.M. is currently residing with her paternal aunt. N.M. is too young to express her desire regarding placement. N.M. is a toddler who requires supervision. N.M.'s paternal aunt is willing to adopt her.

Carrie successfully completed parenting classes and other services requested by the Department. She did not submit to random drug testing as requested by the Department. Carrie testified at the time of trial she had been employed for less than a month. Carrie is currently married, but does not reside with her husband. She moved seven times during the pendency of the case. Carrie testified that she had obtained proper housing and transportation for her and the children. However, she testified that her boyfriend paid the rent on her house as well as her car payment and insurance. Carrie does not have a valid driver's license. Carrie did not provide evidence of being able to provide a stable home for the children.

Considering all the evidence in relation to the *Holley* factors in the light most favorable to the trial court's best-interest finding, we hold that a reasonable factfinder could have formed a firm belief or conviction that termination of Carrie's parental rights was in the best interest of R.M., B.M., and N.M. Viewing all the evidence in relation to the *Holley* factors, we hold that a reasonable factfinder could have reasonably formed a firm belief or conviction that termination was in R.M., B.M., and N.M.'s best interest. The evidence is legally and factually sufficient on the best-interest finding, and we overrule issues five and six.

## Conclusion

We affirm the trial court's order terminating the parental right of Carrie to her children R.M., B.M., and N.M.


AL SCOGGINS
Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
Affirmed
Opinion delivered and filed June 4, 2015
[CV06]

