

# IN THE
# TENTH COURT OF APPEALS

## No. 10-17-00250-CV

## IN THE INTEREST OF W.R.C., H.J.C., AND A.J.C., CHILDREN

**From the 85th District Court
Brazos County, Texas
Trial Court No. 16-000454-cV-85**

## MEMORANDUM  OPINION

Eric C. appeals from a judgment that terminated the parent-child relationship between him and his children, W.R.C., H.J.C., and A.J.C.  After hearing all the evidence, the trial court found by clear and convincing evidence that Eric engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangers the children.  TEX. FAM. CODE ANN. § 161.001 (b) (1) (E) (West Supp. 2017).  The trial court further found by clear and convincing evidence that termination was in the best interest of the children. TEX. FAM. CODE ANN. § 161.001 (b) (2) (West Supp. 2017).  We affirm.

**Facts**

Eric and Amanda were married on June 19, 2004, and they are the parents of the three children. They divorced on September 5, 2013 by decree of the Circuit Court of Russell County, Alabama. Amanda married Adam in November 2013, and they moved to Texas with the three children in December 2013. Amanda filed a Petition for Termination and Adoption of Stepchildren on February 22, 2016.

**Standard of Review**

In the first two issues, Eric argues the evidence is legally and factually insufficient to support the trial court's findings on termination. Only one predicate act under section 161.001 (b) (1) is necessary to support a judgment of termination in addition to the required finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex.2003). In conducting a legal sufficiency review in a parental termination case:

> [A] court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. To give appropriate deference to the factfinder's conclusion and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to be incredible. This does not mean that a court must disregard *all* evidence that does not support the finding. Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence.

*In re J.P.B.*, 180 S.W.3d 570, 573 (Tex.2005) (per curiam) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex.2002)) (emphasis in *J.P.B.*).

In a factual sufficiency review,

> [A] court of appeals must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing.... [T]he inquiry must be "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." A court of appeals should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient.

*In re J.F.C.*, 96 S.W.3d 256, 266-67 (Tex.2002) (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex.2002)) (internal footnotes omitted) (alterations added).

## Endangerment

Section 161.001 (E) of the Texas Family Code allows termination of the parent-child relationship if the parent, "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. 161.001 (E) (West Supp. 2017). Under subsection E, endangerment encompasses "more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment." *Texas Department of Human Services v. Boyd*, 727 S.W.2d 531, 533 (Tex.1987). Endanger means to expose the child to loss or injury or to jeopardize his emotional or physical well-being. *Id.* For a parent to be found to have engaged in conduct which endangers a child it is not necessary that the conduct is

directed toward the child or that the child actually suffers injury. *Id*. The requisite endangerment may be found if the evidence shows a course of conduct by the parent which has the effect of endangering the child. *Texas Department of Human Services v. Boyd*, 727 S.W.2d at 534; *In re J.J.S.*, 272 S.W.3d 74, 78 (Tex.App.-Waco 2008, no pet.).

At the hearing on termination, Eric admitted the following:

- He has three convictions in Alabama for harassment and harassing communications for his actions and communications.

- He told his ten year-old son W.R.C. that his mom was going to die and that Jesus told him his mother was going to die. He told W.R.C. that he was waiting in Alabama for Jesus to kill his mother.

- He would kill Adam and then kill himself.

- He expected God or Jesus to kill Amanda and Adam's two year-old daughter.

- He will not stop his behavior until Amanda acknowledges that her lifestyle is against the Bible.

Eric has not been allowed visitation with the children since October 8, 2013, by order of the Alabama court, but he has been allowed phone contact with the children. The record shows that between June 2016 and June 2017, Eric left several disturbing phone messages for the children. In the messages, Eric repeatedly tells the children that God is going to kill their mother for her evil and wicked ways. He refers to Amanda in

derogatory terms multiple times. Eric tells the children that their mother will have to watch her child with Adam die because God is going to take the life of the baby. Eric repeatedly tells the children that their mother is wicked and that she will pay for her sins.

The record contains recorded conversations between Eric and W.R.C. Eric tells W.R.C. that his mother has kidnapped him and lied to him. Eric states:

> Yes she has and she's going to pay for it. I am not going to rest until your mom is in prison. I'm going to make sure your mom goes to jail.
> …
> I am never going to rest until your mom is either dead or in prison because she is a child molester, she has molested you. She has taught you to do bad things. And she has taught you to do evil things.

Eric further tells W.R.C.:

> Jesus hates what your mom has done. … Jesus has said that she's going to die because He hates what she has done, He hates the wicked life she's lived. Your mom lives a wicked and perverse life son. … When she dies, will you believe it then? … Jesus is going to give her a cancer and kill her. I promise you.

W.R.C. tells Eric that God is not going to kill his mother or his baby sister and that if "you are going to get to my family, you're going to have to get through me." Eric responded, "You're going to have to come with me one day son. When your mom's dead, I'm going to come get you." Eric again states that Amanda and Adam are "sexual perverts and I will never rest until they go to prison or are dead. I promise you they are sexual perverts."

In another phone call, Eric speaks to W.R.C. and tells him directly that God is going to kill his baby sister. W.R.C. begins crying and saying that his mother has done nothing

wrong. Eric insists that his mother has done wrong. In phone messages, Eric states that God is going to execute a righteous judgment and that he believes the kids will be "coming home around February or March." In another phone message Eric again states that the kids will be coming home "this month or the end of March" and that God hates the wicked things their mother has done.

Amanda testified that in September 2013, there was an incident with Eric at W.R.C.'s soccer game where Eric became enraged and began yelling to everyone at the soccer fields. Amanda said that she put the children in the car and left, but Eric followed them in his vehicle and tried to run them off of the road. Amanda stated that the children were scared and crying. Amanda further testified at trial that in October 2013, she and Eric met in the parking lot of the Russell County Sheriff's Office to exchange possession of the children. Amanda testified that in the children's presence, Eric said that he would kill Adam in front of her and then kill himself and the children, but leave her alive. Amanda stated that she feared for her safety and the safety of her children and got a restraining order against Eric.

Amanda testified about the numerous telephone calls and phone messages in which Eric threatens her and Adam and the child they have together. Amanda stated that she believes Eric is capable of causing death or serious bodily injury to her family. Amanda said that W.R.C. was afraid after the phone calls with Eric and that he had nightmares and a fear of being kidnapped.

The record supports the trial court's finding that Eric engaged in conduct which endangered the physical or emotional well-being of the children. TEX. FAM. CODE ANN. 161.001 (E) (West Supp. 2017). Eric's threats, comments, and actions show a course of conduct that endangers the children's emotional well-being. *Texas Department of Human Services v. Boyd*, 727 S.W.2d at 533.

## Best Interest

In determining the best interest of a child, a number of factors have been considered, including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex.1976); *In re S.L.*, 421 S.W.3d 34, 38 (Tex. App.-Waco 2013, no pet.). The *Holley* factors focus on the best interest of the child, not the best interest of the parent. *In re S.L.*, 421 S.W.3d at 38. The goal of establishing a stable permanent home for a child is a compelling state interest. *Id.* The need for permanence is a paramount consideration for a child's present and future physical and emotional needs. *Id.*

The record shows that W.R.C. indicated he does not want to live with Eric. H.J.C. and A.J.C. are young, and the record does not indicate their desires. There is evidence in the record that shows that Eric is a danger to the children's emotional well-being and that he is not able to meet the emotional needs of the children. The attorney ad litem for the children observed the children and talked to the children. The attorney ad litem said that she had listened to the recordings between Eric and W.R.C. and that "these are two of the most disturbing recordings I think I've ever heard." She stated "I believe that it is absolutely in these children's best interest that Eric's rights be terminated and for him not to have contact with these children in the future." We find that the evidence supports the trial court's finding that termination is in the best interest of the children. TEX. FAM. CODE ANN. § 161.001 (b) (2) (West Supp. 2017). We overrule the first and second issues on appeal.

## Jurisdiction

In the third issue, Eric contends that the trial court did not have jurisdiction over the termination proceedings. Amanda filed her Original Petition for Termination and Adoption of Stepchildren in Brazos County on February 22, 2016. Amanda also filed in Russell County, Alabama, a Motion to Dismiss and Transfer Jurisdiction to the State of Texas. On May 4, 2017, the Circuit Court of Russell County Alabama entered an order declining to exercise its jurisdiction over the matter and finding that Texas would be the more appropriate forum. The court in Alabama transferred jurisdiction and venue

"pursuant the Alabama Uniform Child Custody Jurisdiction Enforcement Act (UCCJA) §§ 30-3B-101, et seq., Ala. Code 1975 and also the Federal Parental Kidnapping Prevention Act (PKPA) 128 U.S.C. § 1738A, respectively." Eric appealed the Alabama court's order to the Court of Civil Appeals of Alabama, and the issue of the transfer is pending in the appellate court.

Eric argues on appeal that the Texas trial court did not have jurisdiction under the Uniform Child Custody Jurisdiction Enforcement Act (UCCJA) while the appeal of the order transferring jurisdiction is pending in Alabama.

Section 152.206 of the Texas Family Code provides:

(a) Except as otherwise provided in Section 152.204, a court of this state may not exercise its jurisdiction under this subchapter if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child has been commenced in a court of another state having jurisdiction substantially in conformity with this chapter, unless the proceeding has been terminated or is stayed by the court of the other state because a court of this state is a more convenient forum under Section 152.207.

TEX. FAM. CODE ANN. § 152.206 (a) (West 2014). The record shows that there is no proceeding relating to the custody of the children pending in the Alabama courts. The last custody hearing was held in Alabama in September 2015. Eric appealed the trial court's order to the Alabama Court of Civil Appeals, and that court affirmed the trial court. Eric filed a writ of certiorari to the Supreme Court of Alabama, and the writ was denied. All appeals in Alabama relating to the custody of the children have been denied.

The only matter pending in Alabama is the appeal from the trial court's order transferring jurisdiction. The Alabama court conferred with the court in Texas and determined that Texas was the more convenient forum. Eric has not cited any authority to support his argument that the Texas trial court did not have jurisdiction under the UCCJA while the appeal of the order transferring jurisdiction is pending on appeal in Alabama. We find that the trial court did not err in exercising its jurisdiction. We overrule the third issue.

## Conclusion

We affirm the trial court's judgment.


AL SCOGGINS
Justice

Before Chief Justice Gray,
  Justice Davis, and
  Justice Scoggins
Affirmed
Opinion delivered and filed December 20, 2017
[CV06]

